SHAVIE, Plaintiff in error, v. STATE, Defendant in error.

*No. State 44. Argued December 3, 1970.—Decided January 5, 1971.*
(Also reported in 182 N. W. 2d 505.)

For the plaintiff in error there was a brief by *Tinkham, Smith, Bliss & Patterson,* and oral argument by *Richard P. Tinkham* and *James P. Lonsdorf,* all of Wausau.

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, *William A. Platz,* assistant attorney general, and *Daniel L. La Rocque,* district attorney of Marathon county.

CONNOR T. HANSEN, J.   Three issues are raised on review:

(1) Is a trial court order denying postconviction motions to withdraw a guilty plea and for reduction of sentences reviewable by writ of error?

(2) Did the plea agreement, followed thereafter by the trial court's consideration in sentencing of other alleged offenses, result in a manifest injustice.

(3) Did the interest of justice require that the defendant be put on probation, particularly since the statutory penalty for possession and sale of marijuana had been amended in the interim to provide lesser penalties and because the defendant had no prior convictions?

*Is the order of the trial court denying postconviction motions reviewable by writ of error?*

The state raises this issue in this case and two other cases on this assignment.[1] The postconviction motions in the other two cases are not as all-inclusive as those in the instant case. In both of them the motion relates to an order denying a motion to withdraw pleas of nolo contendere.

---

[1] *Young v. State, ante,* p. 361, 182 N. W. 2d 262; *Johnson v. State, post,* p. 455, 182 N. W. 2d 502.

The state does not contend that an order denying a new trial is not reviewable by writ of error under the statutes as they existed at the time this case was before the trial court.[2]

It is, however, the state's contention that a writ of error cannot be brought to review an order denying a motion for leave to withdraw a guilty plea or for reduction in sentence. Basic to this contention is the proposition that a writ of error lies only to review final judgments, or orders in the nature of final judgments, and that motions for leave to withdraw a guilty plea and for a reduction in sentence do not result in a final judgment, nor in an order in the nature of a final judgment.

Generally, a writ of error, as a reviewing device, "lies after final judgment, or after an order in the nature of a final judgment, rendered in a court of law, to correct some supposed mistake which is apparent on the face of the record." *Martin v. State* (1941), 236 Wis. 571, 573, 574, 295 N. W. 681.

The order in the instant case is not a final judgment. And, relying on this court's definition that "[a]n 'order in the nature of a final judgment' is one ending a proceeding and preventing a final judgment," *State ex rel. Dore v. Stoltz* (1969), 42 Wis. 2d 534, 538, 167 N. W. 2d 214, the state argues that the order is not an order in the nature of a final judgment.

The state's primary reliance is upon *Jackson v. State* (1896), 92 Wis. 422, 66 N. W. 393, wherein this court examined a writ of error to review an order of the trial court denying a motion for a new trial. Observing that since the adoption of the constitution and the enactment of sec. 3043 (now sec. 274.05, Stats.), it had been held that ". . . a writ of error lies only in case of a final

---

[2] Sec. 958.06, Stats. 1967.

judgment or an order in the nature of a final judgment
. . . ." *Jackson v. State, supra,* page 423.

". . . We must hold that an order denying a motion
for a new trial, under sec. 4719 [now sec. 958.06], is
not a final judgment or an order in the nature of a final
judgment. Hence, the writ of error was improvidently
issued and must be dismissed." *Jackson v. State, supra,*
page 424.

As a response to *Jackson v. State,* the legislature en-
acted what was sec. 958.06 (2), Stats.,[3] allowing the
writ to review an order denying a new trial. The legis-
lature did not expand the use of the writ to the motions
presently in question. Accordingly, the state argues that
if an order denying a new trial was not a final judgment
nor an order "in the nature of a final judgment" (which
necessitated a legislative change to make it reviewable),
neither is an order denying leave to withdraw a guilty
plea or for reduction in sentence.

In *Jackson v. State, supra,* pages 424–427, Mr. Jus-
tice PINNEY, with Mr. Justice WINSLOW concurring,
wrote a dissent interpreting this court's powers differ-
ently. He stated the court's authority to issue a writ
of error was not dependent upon a specific legislative
enactment, but that the constitution and statutes relat-
ing to this court's appellate jurisdiction gave it the au-
thority to issue such writs as are necessary to exercise
its appellate jurisdiction.

---

[3] "958.06 New trial; sentence; service of affidavits; writ of
error. . . .

"(2) If the defendant desires to use affidavits upon his motion,
copies of the same shall be served on the district attorney at least
20 days before the argument of the motion or such shorter time
as the court designates. If a new trial is denied, the supreme
court shall issue a writ of error on the application of the de-
fendant, and may review the order refusing a new trial and may
render such judgment as it deems proper."

"The constitution (sec. 3, art. VII) provides that 'the supreme court, except in cases otherwise provided by this constitution, shall have appellate jurisdiction;' and with this grant of appellate jurisdiction and as incident thereto, and without any legislation in its aid, the court took the right to issue and use all common-law writs and process, with the right to frame and issue such other writs as might be necessary to make its appellate jurisdiction effective. Hence it took the right to issue writs of error as common-law process, and to hear and determine the same. The writ was never of statutory origin, though to a certain extent its use was regulated by statute, and it was this common-law writ which the constitution provided (sec. 21, art. I) should 'never be prohibited by law.' . . .

"It is provided by statute (R. S. sec. 2405) that the appellate jurisdiction of the supreme court 'shall extend to all matters of appeal, error, or complaint from the decisions or judgments of any of the circuit courts, county courts or other courts of record, and shall extend to *all* questions of law which may arise in said courts, *upon motion for new trial,* in arrest of judgment, or in cases reserved by said courts.' And, by sec. 2406, it is provided that 'in addition to the writs mentioned in sec. 3, art. VII, of the constitution, the supreme court shall have power to issue writs of prohibition, supersedeas, procedendo, and *all other writs and process not specially provided by statute* which may be necessary to enforce the due administration of right and justice throughout the state.' . . . . While secs. 3043 and 4724 contain provisions regulating the manner of issuing writs of error, they do not in any manner limit or restrict the statutory provisions quoted, and could not qualify in the least degree the constitutional appellate jurisdiction and functions of the court.

". . . . [T]he court is not dependent upon legislation for means to exercise its appellate jurisdiction, but that, when occasion requires, it can and should frame rules and adopt such writs as are essential to the discharge of its constitutional functions. . . .

". . . . [T]he order denying this motion was so far in the nature of a final judgment that it is the subject of a writ of error. It was a final determination of the new case made by the plaintiff in error, and a denial

of an important right secured by the statute, so that it comes fairly within the rule. A writ of error is a remedial process, and ought to be used so as to advance the remedy, and ought not to be administered in the spirit of rigid and inflexible technicality. . . ."

We agree with the reasoning in Mr. Justice PINNEY'S dissent. We here conclude that the constitutional and statutory provisions defining this court's appellate jurisdiction give the court the right to issue a writ of error, and to hear and determine the same, where necessary to discharge its functions as an appellate court.[4] We hold that orders denying motions for a new trial, for leave to withdraw a plea of guilty or nolo contendere, and for reduction in sentence, are orders in the nature of final judgments and as such are reviewable by this court by writ of error.

---

[4] Art. VII, sec. 3, Wisconsin Constitution:

"The supreme court, except in cases otherwise provided in this constitution, shall have appellate jurisdiction only, . . . [I]t shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, and other original and remedial writs, and to hear and determine the same."

Sec. 251.08, Stats. "Appellate jurisdiction. The supreme court shall have and exercise an appellate jurisdiction only, except when otherwise specially provided by law or the constitution, which shall extend to all matters of appeal, error or complaint from the decisions or judgments of any of the circuit or county courts and shall extend to all questions of law which may arise in said courts upon a motion for a new trial, in arrest of judgment, or in cases reserved by said courts."

Sec. 251.10, Stats. "Original writs; writs in vacation. In addition to the writs mentioned in section 3 of article VII of the constitution the supreme court shall have power to issue writs of prohibition, supersedeas, procedendo and all other writs and process not specially provided by statute which may be necessary to enforce the due administration of right and justice throughout the state; . . ."

*Plea agreement.*

The defendant was arraigned on October 20, 1969, and entered a plea of not guilty to an information charging him with possession of marijuana in violation of sec. 161.275 (1), Stats.; two counts of sale of a dangerous drug in violation of sec. 151.07 (1) (a) 3 (k) [sic. 151.07 (12) (b)]; and one count of encouraging another to violate sec. 151.07 in violation of sec. 151.07 (12) (c).

On October 23, 1969, pursuant to a plea agreement, an amended information was filed which contained only the two charges that are the basis for this appeal. The second count (sale of marijuana) was a newly charged offense.

Defendant now asserts that certain comments by the district attorney concerning uncharged offenses, after trial court had accepted defendant's plea of guilty and before sentencing, were contrary to the plea agreement and, therefore, resulted in a manifest injustice to the defendant. The affidavit of the defendant in support of this assertion states the agreement was that if the defendant pleaded guilty to the two charged offenses, the trial court would only consider the two charged offenses in sentencing. The record in this case, as we view it, does not support this assertion.

It has been held that the trial court may hear evidence concerning uncharged offenses for consideration in sentencing pursuant to an agreement by which the state agrees not to prosecute the uncharged offenses and where it is expressly stipulated as part of the agreement that the court hear evidence of the uncharged offenses. *State v. Smith* (1969), 45 Wis. 2d 39, 172 N. W. 2d 18; *Embry v. State* (1970), 46 Wis. 2d 151, 174 N. W. 2d 521; *Mallon v. State,* ante, p. 185, 181 N. W. 2d 364.

In this case it was not expressly stipulated as part of the plea agreement that the court would hear statements

relating to the uncharged offenses. Rather the plea agreement was that the defendant would plead guilty to the two offenses only and the state would not prosecute for other offenses which had occurred prior to the agreement.

However, the record in this case reveals that prior to entering a plea of guilty both the defendant and his attorney stated they understood that the defendant was being charged only with the offenses in the amended information and that the district attorney had agreed not to prosecute any other charges. Also, prior to the defendant's guilty plea, the district attorney twice stated in open court and in the presence of the defendant and his attorney that he intended to inform the court of the defendant's other activities in the sale of drugs.

The record also reveals that the trial court exhaustively examined the defendant prior to accepting the plea. Among other things, the trial judge carefully explained to the defendant the nature of the charges and the full extent of possible punishment and other relevant constitutional rights. Both counsel for the defendant and the state made extensive statements to the trial court after the court had accepted the plea of guilty and before sentence had been imposed.

The district attorney informed the trial court of the circumstances surrounding the two charged offenses, and as he stated he would, on two occasions before the defendant entered his plea, informed the trial court of other uncharged offenses by reading certain statements of other witnesses. The statements read contained considerable information about the defendant's activity in matters related to the charged offenses. One of the statements, among other things, contained a sentence stating that defendant would sell to people anywhere from twelve to thirty years old. Defendant's counsel objected to the statement concerning the sale of drugs to juveniles under the age of seventeen years. The trial

judge volunteered to withdraw from the case if defense counsel was of the opinion that he would be in any way prejudiced by the statement. It was agreed, in the record, that the trial judge would proceed with the case and disregard the statement made relating to sale of drugs to juveniles under seventeen years of age. No other objection was made to the statement presented by the district attorney. Thereafter, both the defendant and defendant's counsel also made statements in court concerning the defendant's general involvement in the sale of drugs.

One of the factual situations, which is an example of a manifest injustice entitling the defendant to withdraw a plea of guilty, occurs when defendant proves " 'he did not receive the charge or sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement.' " *State v. Reppin* (1967), 35 Wis. 2d 377, 385, 151 N. W. 2d 9.

In this case there were no sentence concessions contemplated by the plea agreement; the plea agreement that was made was honored; the defendant was aware that the court would hear evidence of other offenses before he entered his guilty plea; and the court's consideration of the other offenses in imposing sentence was proper under the prior decisions of this court and the facts of this case.

The trial court carefully and thoroughly advised the defendant of all his constitutional rights before accepting the plea of guilty. Although we find no error in this case, we are of the opinion that when a plea agreement contemplates consideration by the trial judge of uncharged offenses at the time of sentencing, sound procedure requires that the details thereof be made a matter of record before the trial court accepts the plea of guilty. This being done, no misunderstanding will result between the state and defendant as to the nature

of the uncharged offenses to be considered by the trial judge at the time of sentencing. It follows, as a matter of course, that the trial court should in no way participate in such agreement and the defendant, defendant's counsel, and the state, should at all times be cognizant of the fact that the trial court is in no way bound by such a plea agreement between the state and the defendant and his counsel. Our observations herein relate solely to those situations where plea agreements between the state and the defendant are predicated upon the trial court's consideration of uncharged offenses at the time of sentencing. *Pulaski v. State* (1964), 23 Wis. 2d 138, 144, 126 N. W. 2d 625.

*Did the interest of justice require the defendant be put on probation since the statutory penalty for possession and sale of marijuana had been amended in the interim and the defendant had no prior convictions?*

The trial court found the defendant guilty of one count of possession of marijuana and one count of sale of marijuana, and sentenced him to a term of not less than two years on the first count and not less than three years on the second count, the sentences to run concurrently. The defendant contends that the sentence was too harsh and he should have been placed on probation.

Prior to accepting the pleas, the trial judge informed the defendant that the penalty on the first count was not less than two years imprisonment, nor more than ten years, and on the second count not less than three years, nor more than twenty-five years. The record reveals the defendant understood the full range of possible sentences. The defendant received the minimum sentence permissible under the statutes in effect at the time he was sentenced, sec. 161.28 (1) and (2), Stats. 1967. Subsequently the statutes were amended to reduce the maximum sentence and to eliminate a minimum sentence as to first offenders. Sec. 161.30 (12) (a) and (f), Stats. 1969.

In imposing sentence, the trial court stated:

". . . I want to advise you further that in the event the legislature in the very near future reduces the penalty to a lesser amount than now prescribed by statute, I will exercise what influence I might have as the presiding judge, presiding over this case to have consideration given to you in accordance with such reduced penalties. I recognize the fact in my own judgment the penalties here are too great for the offense involved, especially with respect to the first count. I have, however, not much sympathy for a young man in connection with the second count, who is selling this to people in this community for a profit. For the reasons stated, I don't feel that I have, that I can possibly consider probation in this matter."

On March 11, 1970, the trial judge who sentenced the defendant sent a letter to the administrator of the division of corrections recommending favorable consideration be given to the defendant's application for early release on parole. However, there is no indication in the record that the defendant would have been placed on probation if the new penalty provisions had been in effect at the time the defendant was sentenced. The trial judge who heard the defendant's postconviction motion also declined to place the defendant on probation.

In *State v. Beal* (1968), 40 Wis. 2d 607, 162 N. W. 2d 640, this court found that the trial court did not abuse its discretion in imposing a two-year sentence on a defendant convicted of possession of marijuana. The court stated:

"The defendant asks that his two-year sentence be reviewed and probation be granted.

"The power of an appellate court to review a lawfully imposed sentence is governed by a strong policy against interference with the discretion of the trial court. *State v. Rice* (1967), 37 Wis. 2d 392, 401, 155 N. W. 2d 116; *Nelson v. State* (1967), 35 Wis. 2d 797, 151 N. W. 2d 694.

"The granting of probation is allowed only as prescribed by statute. Sec. 57.01, Stats., provides in part

that probation may be granted to a convicted felon if '. . . it appears to the court from his character and the circumstances of the case that he is not likely again to commit crime and that the public welfare does not require that he shall suffer the penalty of the law . . . .'

"Here the trial court not only observed the defendant, but it had the advantage of a presentence investigation which explored the defendant's background, circumstances and attitude. There is no basis for concluding that the trial court, which after careful deliberation imposed a minimum sentence, abused its discretion in this case." *State v. Beal, supra,* page 617.

We, therefore, affirm the judgment and order of the trial court.

*By the Court.*—Judgment and order affirmed.