Austin, Plaintiff in error, v. State, Defendant in error.

*No. State 17. Argued January 8, 1971.—Decided February 5, 1971.*
(Also reported in 183 N. W. 2d 56.)

The cause was submitted for the plaintiff in error on the brief of *James H. McDermott*, state public defender, and for the defendant in error on the brief of *Robert W. Warren*, attorney general, *E. Michael McCann*, district attorney of Milwaukee county, and *Joseph Wilson*, assistant district attorney.

HALLOWS, C. J.   Lately, this court has been confronted with an increasing number of appeals involving negotiated-plea agreements in which the district attorney has agreed not to prosecute uncharged offenses if the defendant would agree to a "read in" of these uncharged offenses and to allow the court to take such offenses into consideration in sentencing him on the charged offense. The validity of such an agreement not to prosecute has not yet been the subject of a defense in a subsequent suit, but the question has arisen in connection with the attempted withdrawal of a plea of guilty. Since the so-called "read in" of uncharged crimes for the purpose of sentencing on the crime charged is somewhat unique to Wisconsin and is closely allied with the problems involved in the consolidation of multiple offenses and the problems involved in the application of the recidivist statute, a brief review of these different procedures is necessary to the understanding of the consequences of a "read in."

In *Embry v. State* (1970), 46 Wis. 2d 151, 157, 174 N. W. 2d 521, we explained the read-in procedure as follows:

"In sentencing, a trial judge must consider the nature of the crime, the character of the accused, and the rights of the public. In determining the character of the accused and the need for incarceration and his rehabilitation, the court must consider the nature of the crime and whether it is an isolated act or a pattern of conduct.

In considering other crimes for such purpose, it is the weight of authority that the sentencing judge can take such offenses into consideration to determine the sentence for the crime in question. *See* Annot. (1964), *Court's right, in imposing sentence, to hear evidence of, or to consider, other offenses committed by defendant,* 96 A. L. R. 2d 768.

"This procedure must be distinguished from a practice in this state, especially in Milwaukee, of charging a multiple offender with two or more offenses for which the evidence is most conclusive and bringing the judge's attention to additional uncharged offenses, prior to sentencing. Upon agreement between the state and the accused, the judge may take these offenses into consideration and the prosecution agrees not to prosecute. It is expected the uncharged crimes will influence the length of the sentence for the crime or crimes the defendant has been found guilty of or to which he has plead guilty. The advantage of this technique to the accused is that he can clean his slate of several uncharged crimes with the safety of only receiving at the most the maximum sentence on the one or two crimes of which he is convicted. *See* Dawson, *Sentencing: The Decision As To Type, Length, And Conditions of Sentence,* page 209, The Administration of Criminal Justice series. This procedure is also to be distinguished from consolidating pending charges in several counties in one county under sec. 956.01, Stats."

As early as 1964 in *Pulaski v. State,* 23 Wis. 2d 138, 126 N. W. 2d 625, this court was confronted with both a read in by a Milwaukee circuit court of 21 offenses committed in Milwaukee county, where the defendant was charged and convicted on his plea of guilty to three charges of burglary and a consolidation of charges of crimes pending in Kenosha and Ozaukee counties. The question involved was whether the plea agreement included the consolidation of out-of-county as well as the read-in charges. We held not. But in discussing the consolidated charges under sec. 956.01, Stats. (now sec. 971.09, Stats.), we stated at page 147:

"Consolidation of charges of crime pending in several counties is not automatic and requires the initiative of

the accused. Under sec. 956.01 (13), Stats., a person who admits a felony in a county in which he is in custody and also in another county may apply to the district attorney of the county in which he is in custody to be charged with those crimes so he may plead guilty and be sentenced for them in the county of custody. There is no requirement that all charges must be consolidated if an application is made; the statute leaves to the discretion of the district attorney in the other county whether or not to consent to such a consolidation."

This procedure of consolidating cases finds approval in the American Bar Association's Standards for Criminal Justice. The identical *Standards Relating to Pleas of Guilty,* sec. 1.2,[1] and the *Standards Relating to Sentencing, Alternatives and Procedures,* sec. 5.2, provide for a procedure which is essentially the same as sec. 971.09, Stats. While it is pointed out in the commentary to sec. 1.2 of the *Standards Relating to Pleas of Guilty* that the objective served by the consolidation of multiple offenses is similar to the British practice of "taking into account," the result in our opinion is somewhat different. So too is the effect of our read-in procedure. The Wisconsin practice of consolidation, like the standards, requires the entry of a plea of guilty to the other offenses and, more importantly, the defendant is subject to whatever sentence might be imposed on any or all of the several offenses to which he is pleading.

---

[1] 1.2 **Pleading to other offenses.**

"Upon entry of a plea of guilty or nolo contendere or after conviction on a plea of not guilty, the defendant's counsel may request permission for the defendant to enter a plea of guilty or nolo contendere as to other crimes he has committed which are within the jurisdiction of coordinate courts of that state. Upon written approval of the prosecuting attorney of the governmental unit in which these crimes are charged or could be charged, the defendant should be allowed to enter the plea (subject to the court's discretion to refuse a nolo contendere plea). Entry of such a plea constitutes a waiver of the following: (i) venue, as to crimes committed in other governmental units of the state; and (ii) formal charge, as to offenses not yet charged."

Under our read-in procedure, the defendant does not plead to any charges and therefore is not sentenced on any of the read-in charges but such admitted uncharged offenses are considered in sentencing him on the charged offense. Thus under the read-in procedure, the defendant does not run the risk of consecutive sentences or even concurrent sentences. His only risk is a longer sentence for the crime charged but this sentence cannot exceed the maximum. Of course, it is possible that if the defendant is a recidivist the ordinary maximum for the crime might be extended in the discretion of the judge. But unless the defendant is so charged and has knowledge thereof at the time of his plea under the agreement, this cannot happen. *Block v. State* (1968), 41 Wis. 2d 205, 163 N. W. 2d 196; *State v. Watkins* (1968), 40 Wis. 2d 398, 162 N. W. 2d 48; sec. 973.12, Stats. Read-in offenses are not prior convictions and cannot be used under sec. 973.12, the repeater statute.

The English practice of "taking into account" allowed consideration of uncharged offenses at the request of the accused and, like the Wisconsin practice, there was no conviction in respect to such offenses. The English practice is set forth in *R. v. Nicholson* (1947), All E. R., Vol. 2, pp. 535, 536. This case expressed a doubt that the taking into account of outstanding offenses constituted grounds for a successful plea of *autrefois convict*, which plea seems to have the same effect as our double-jeopardy plea. Consequently, after this case there may have been no defense in England to a subsequent prosecution of an offense which had been previously taken into account. However, the English practice had been not to prosecute offenses taken into account. In the United States the *Model Penal Code*, sec. 7.05,[2] relating to ex-

---

[2] **Model Penal Code**, sec. 7.05 (4) provides:

"When the defendant has asked that other crimes admitted in open court be taken into account when he is sentenced and the Court has not rejected such request, the sentence shall bar the

tended terms in sentencing for felonies provides that the defendant may admit in open court the commission of other felonies and ask that they be taken into account and when this is done, the sentence bars the prosecution of such admitted crime. However, the procedure under the Model Penal Code works like the Wisconsin repeater statute in that the court may extend the term of the ordinary maximum penalty for the crime charged by taking into account the other offenses. While this procedure enables the accused to start with a clean slate when he is released from prison, he runs the risk of a longer sentence as a multiple offender under secs. 7.03 and 7.04 for the other crimes admitted. He does, however, gain the benefit of immunity from future prosecution and of the limitation on consecutive sentences which the Model Penal Code imposes.

The question now is, what is the effect of the district attorney's promise not to prosecute a "read in" in Wisconsin? A read in is not necessarily confined to cases of pleas of guilty. After conviction upon a plea of not guilty, the accused may agree with the district attorney for a read in of other crimes in exchange for a promise of immunity. In *State v. Smith* (1969), 45 Wis. 2d 39, 172 N. W. 2d 18, we stated a subsequent prosecution for a read-in offense would be barred by the defense of double jeopardy. This may be contrary to the old English practice. It is claimed *State v. Brooks* (1934), 215 Wis. 134, 254 N. W. 374, is also to the contrary because double jeopardy does not attach unless the defendant is charged and tried for the offense. This language in *Smith* may be unduly optimistic, but its retraction renders no aid to the defendant here, who claims such an agreement is unenforceable and invalid on public-policy grounds.

prosecution or conviction of the defendant in this state for any such admitted crime."

While this case was pending this court decided *Mallon v. State*, ante, p. 185, 181 N. W. 2d 364, and *Shavie v. State*, ante, p. 379, 182 N. W. 2d 505. In *Shavie* the question examined was whether the plea agreement included a read in of uncharged offenses. We concluded the agreement consisted of a plea of guilty to two offenses and a promise of the state not to prosecute for other offenses and found there was no breach of this agreement because the prosecutor, prior to the entry of the guilty plea, informed the court of the other uncharged offenses by reading certain statements of the witnesses in the record. We caution that when the plea agreement contemplates the nonprosecution of uncharged offenses the details of the plea agreement should be made a matter of record. A plea agreement should always be made a matter of record whether it involves a recommendation of sentencing, a reduced charge, a *nolle prosequi* of charges or read ins with an agreement of immunity. Such disclosure is recommended in the ABA Standards Relating to Pleas of Guilty in sec. 3.3. In Wisconsin practice which uses a post-plea-of-guilty hearing to determine the voluntariness and accuracy of the plea, the read-in procedure should be a part of this hearing. The read-in agreement should be a part of the sentencing hearing when the agreement is made after conviction. *See* Dawson, *supra,* pages 16, 20.

In *State v. Mallon, supra,* we stated a read in barred the subsequent prosecution on the ground of due process and approved the language of the trial court in that respect. *Mallon* also relied upon *Embry v. State, supra,* to dispose of the argument that read ins were invalid on the ground of public policy. In *Mallon* all the arguments made here in respect to the inability of the district attorney to promise or to carry out the immunity from prosecution in exchange for a read in were made and answered, and we decline now to retreat from that decision.

We recognize the enforceability of plea agreements involving immunity from prosecution is not uniformly recognized. Agreements similar to that in this case have been held unenforceable in *People v. Groves* (1923), 63 Cal. App. 709, 219 Pac. 1033; *Tullis v. State* (1899), 41 Tex. Crim. 87, 52 S. W. 83; *State v. Guild* (1899), 149 Mo. 370, 50 S. W. 909; and *State v. Crow* (Mo. 1963), 367 S. W. 2d 601. Cases holding these agreements enforceable include *State v. Ward* (1932), 112 W. Va. 552, 165 S. E. 803; *People v. Siciliano* (Cty. Ct. 1945), 185 Misc. 149, 56 N. Y. Supp. 2d 80; *State v. Hingle* (1961), 242 La. 844, 139 So. 2d 205; and *State v. Davis* (Fla. 1966), 188 So. 2d 24. Analysis of these cases reveals the determinative issue is not whether such agreements when made ought be enforceable, but whether the party granting *nolle prosequi* had the authority to do so. In all the cases holding the agreement unenforceable, the court ruled the party entering the agreement with the accused had no authority to make the agreement. For example, *State v. Crow, supra,* ruled a sheriff did not have the power to grant such immunity.

Where it is established the district attorney may grant *nolle prosequi,* the agreements are usually upheld on public-policy grounds. The most persuasive case is *State v. Hingle, supra,* in which the Louisiana court initially followed the cases denying enforceability of the agreements. On rehearing, the court noted that Louisiana had no statutory or jurisprudential prohibition against the power of a district attorney to *nolle prosequi* a case and concluded, following the landmark case of *State v. Ward, supra,* that when a district attorney made such an agreement, public policy and public faith demanded the agreement be kept. The *Hingle Case* stated, page 859:

"The rationale for such a ruling is to be found in a number of cases, notably *Commonwealth v. St. John, supra,* where the court stated that 'When such promises

are made by the public prosecutor, or with his authority, the court will see that due regard is paid to them, and that the public faith which has been pledged by him is duly kept.' This is particularly true where the accused, in reliance on such a pledge, has carried out his part of the agreement, and, in doing so, may have relinquished valuable fundamental rights, such as the constitutional guarantee he cannot be compelled to give evidence against himself, a trial on the merits, and the possibility of being entirely exonerated if the evidence is weak and insufficient to sustain a conviction. See, State v. Mockosher, 205 La. 434, 17 So. 2d 575; People ex rel. Valle v. Bannan, 364 Mich. 471, 110 N. W. 2d 673; and Commonwealth v. Smith, Ky., 244 S. W. 2d 724."

While none of the cases enforcing the district attorney's agreement approach the issue in terms of due process of law, we consider the facts constituting good public policy require the application of the doctrine of due process, which rests upon "that whole community sense of 'decency and fairness' that has been woven by common experience into the fabric of acceptable conduct." *Breithaupt v. Abram* (1957), 352 U. S. 432, 436, 77 Sup. Ct. 408, 1 L. Ed. 2d 448.

*By the Court.*—Judgment and order affirmed.