STATE of Wisconsin, Plaintiff-Respondent,

v.

Christopher CLEAVES, Defendant-Appellant.†

Court of Appeals

*No. 93–1521–CR. Submitted on briefs October 14, 1993.—Decided December 8, 1993.*

(Also reported in 510 N.W.2d 143.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William J. Tyroler*, assistant state public defender.

---

†Petition to review filed.

---

73

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *G.M. Posner-Weber*, assistant attorney general.

Before Brown, Nettesheim and Snyder, JJ.

BROWN, J. Christopher Cleaves was convicted of two counts of operating a motor vehicle without the owner's consent for which he was sentenced to four years in prison on each count, to be served concurrently. He was also ordered to pay restitution of $305 concerning two charges that were dismissed, but read in at sentencing. He disputes only the $305 restitution order. He argues that the record must show his *personal* admission to the read-ins and since such personal admission is absent here, the restitution requirement should be removed. Because personal admission is not required, we affirm.

The facts are as follows. Cleaves spent the night at Julia Shell's apartment in Chicago and later took her automobile without permission. He drove the auto to Kenosha and operated it over the course of two days. For this, he was charged with two counts of operating without the owner's consent (counts 1 and 2). Cleaves was also charged with entering the locked vehicle of Melissa Peters (count 3) and theft of $915 from the glove box, which allegedly belonged to Justine Rufus (count 4).

At a later plea hearing, Cleaves pled guilty to counts 1 and 2, the operating without consent charges. He continued to maintain his innocence of counts 3 and 4. However, Cleaves indicated that he wished to waive his right to a jury trial on those counts. The court conducted the necessary personal colloquy with Cleaves

regarding the pleas and also received a personal waiver of Cleaves' right to a jury trial on counts 3 and 4. No assignment of error is raised as to either colloquy. Then, the trial court and counsel discussed arrangements for trial on the remaining counts. After a short recess, the following exchange occurred:

THE COURT: The court has been informed by Mr. Bramscher [defense counsel] and Mr. Dooley [prosecutor] that apparently resolution has been received as to dismissing Counts 3 and 4 except for read-in as to restitution. Is that correct?

MR. DOOLEY: Correct, Your Honor.

THE COURT: Okay. And what is the amount of restitution?

MR. DOOLEY: Well, the claimed amount stolen was $915, Your Honor. When the defendant was—I'm sorry. Yeah, 915. When the defendant was caught by the police he had 610 in his pocket. I planned to release the cash to the alleged victim there when she shows up from Mayville tomorrow, which would leave a balance on the restitution on that count, I believe, of 295.

THE COURT: 305.

MR. DOOLEY: 305. I had the wrong numbers here. I'm sorry.

THE COURT: Okay. Is that satisfactory to you, Mr. Bramscher?

MR. BRAMSCHER: My client indicates that is satisfactory and it is also satisfactory with me.

THE COURT: Okay. Then the Court will order dismissal of Counts 3 and 4, but for the restitution amount of $305 to be paid to Justine Rufus?

MR. DOOLEY: Correct, Your Honor. . . .

. . .

THE COURT: Do you have any prior record, Mr. Cleaves?

MR. CLEAVES: Yes, I do, Your Honor.

. . .

THE COURT: Where?

. . .

MR. CLEAVES: Tomah, Monroe.

THE COURT: Monroe County. Okay. How long ago were you sentenced there?

MR. CLEAVES: '90 of April.

At the sentencing hearing, Attorney Robert Bramscher, Cleaves' defense counsel, began by attacking the presentence report. He claimed that the presentence was written as if there had been a conviction on the theft count 4, when, in fact, the count had been dismissed outright and there was "no read-in." The trial court did not respond to the statement that there was "no read-in." The trial court only said that, from its reading of the presentence report, the court was able to distinguish the two car theft charges Cleaves had pled guilty to from the glove box theft. There was no further comment by counsel and the hearing proceeded.

Cleaves himself spoke of the mitigating circumstances surrounding counts 1 and 2. At no time did Cleaves dispute counts 3 and 4 or the fact that they were being read-in. A dispute regarding the restitution came when the prosecutor, who was different from the one who agreed to the plea bargain, claimed that the amount of restitution totaled $910. When Bramscher questioned that amount, the prosecutor explained that there was a cost of $590 for flying in a witness and

requested that the airfare for the witness be added to the $305 previously ordered. The court allowed the amendment over Bramscher's apparent objection.

A motion for postconviction relief was subsequently filed. The part of the motion regarding restitution consisted of mainly two claims: that the costs of transporting a potential witness should not be part of the restitution order and that since Cleaves never personally admitted to taking the money alleged in count 4, the court lacked jurisdiction to order restitution. The trial court agreed with the first part of the motion and ordered the costs of transportation to be imposed as costs against Cleaves rather than restitution. The trial court rejected the remaining claim that a personal admission is required.

Cleaves argues that personal admission to a read-in offense is a condition precedent to the trial court's authority to order restitution for that read-in. He claims that this is statutorily required. However, Cleaves cites no statute that he believes is in need of construction by this court. Rather, he cites case law dealing with the correct read-in procedure in Wisconsin courts and argues that the procedure was violated. As such, the issue is more properly a question of applying the facts to the common law of this state rather than applying the facts to a statute. This is a question of law which we review *de novo. See Town of Menasha v. City of Menasha*, 170 Wis. 2d 181, 190, 488 N.W.2d 104, 108 (Ct. App. 1992).

Review of the case law shows that our read-in procedure is an outgrowth of English common law. In *Austin v. State,* 49 Wis. 2d 727, 183 N.W.2d 56 (1971), our supreme court wrote that English common law and its subsequent growth have provided a system whereby

a defendant may admit in open court the commission of other charges and ask that they be taken into account, and when this is done, the sentence bars the prosecution of such admitted crime. The court explained that Wisconsin has followed the practice in the form of our read-in procedure described as follows:

> Under our read-in procedure, the defendant does not plead to any charges and therefore is not sentenced on any of the read-in charges but such admitted uncharged offenses are considered in sentencing him on the charged offense. Thus under the read-in procedure, the defendant does not run the risk of consecutive sentences or even concurrent sentences. His only risk is a longer sentence for the crime charged but this sentence cannot exceed the maximum.

*Id.* at 732, 183 N.W.2d at 58-59. This same passage from *Austin* was the subject of further explanation by this court in *State v. Szarkowitz,* 157 Wis. 2d 740, 460 N.W.2d 819 (Ct. App. 1990). In *Szarkowitz,* the court wrote that "[i]n Wisconsin, when a defendant agrees to crimes being read in at the time of sentencing, he makes an admission that he committed those crimes." *Id.* at 753, 460 N.W.2d at 824. Thus, our read-in procedure dictates that when a defendant agrees to the read-in, he or she admits that the crimes occurred. The real question here, then, is whether Cleaves agreed to the crimes being read in.

We have no hesitancy in determining that Cleaves agreed to the dismissed crimes being read in. The record shows that he had been the subject of previous criminal court proceedings. We can thus infer that he was not unsophisticated in the criminal court environment. He was present when the prosecutor and his attorney related the agreement on the record. He was

there when his attorney told the court that the agreement as to the read-in was satisfactory to his client and to him. He heard the court and counsel discuss the amount that he would have to pay in restitution. While he had steadfastly denied committing counts 3 and 4 up to that time even though pleading guilty to counts 1 and 2, he did not object to the read-in procedure. Not once during this entire time did he voice objection to the read-in procedure. Since he did not object to the crimes being read in, he admitted them.

Cleaves claims that the law requires his personal admission. His sole basis for this argument is the *Austin* language which speaks of read-in charges being "admitted uncharged" offenses which are considered in sentencing. As *Szarkowitz* explains, however, Cleaves' "admission" to the charges came when he allowed the dismissed crimes to be "read in."

■

*Szarkowitz* is also authority for our holding in a different context. The defendant, Szarkowitz, claimed that he never "stipulated" to the amount of restitution. He argued that the court's failure to obtain a stipulation violated sec. 973.20(13)(c), Stats., which states that the court "shall give the defendant the opportunity to stipulate to the restitution claimed by the victim." *Szarkowitz*, 157 Wis. 2d at 747, 460 N.W.2d at 822. If the defendant does not stipulate to the amount, the victim may prove the loss by producing a preponderance of evidence of the amount. *See* sec. 973.20(14)(a). In *Szarkowitz*, there was neither an express stipulation, nor proof by the victim. Nonetheless, this court wrote that Szarkowitz was aware of the restitution summary in the presentence and did not contest it. The prosecutor referred to the amount in her sentencing argument to the court. Szarkowitz did not object to it.

*Szarkowitz*, 157 Wis. 2d at 748, 460 N.W.2d at 822. The court then wrote:

> The use of the word "stipulate" in sec. 973.20(13)(c) does not imply a requirement of a formal written stipulation, signed by the defendant, as to the amount of restitution claimed. We hold that, in the absence of any objection to amounts claimed on a court-ordered restitution summary accompanying a presentence investigation, where a defendant has been given notice of the contents of that report and summary, the trial court is entitled to proceed on the understanding that the claimed amount is not in dispute, and so order restitution under sec. 973.20(13)(c).

*Id.* at 749, 460 N.W.2d at 822. In the instant case, Cleaves is not objecting to the amount of restitution. He objects to the fact that restitution was ordered resulting from a read-in which was not the product of personal admission. However, the same reasoning applies. In the absence of any objection to the crimes being read in, the court may assume that the defendant admits them for purposes of being considered at sentencing.[1]

*By the Court.*—Judgment and order affirmed.

NETTESHEIM, J. (*concurring*). I agree with the majority opinion. I write further only to elaborate on the majority's concluding footnote which properly suggests that the trial court expressly obtain an admission from the defendant to a read-in charge.

---

[1] To clarify the record, however, we suggest that trial courts in the future ask the defendant if there is an admission to the read-in charge for purposes of sentencing consideration. We believe that this is the better practice.

80

A read-in charge is usually accompanied by three conditions: (1) the defendant acknowledges responsibility for the uncharged or dismissed read-in charge, (2) the defendant agrees that the trial court may consider the read-in charge for purposes of sentencing on the charges of which the defendant is convicted, and (3) the defendant accepts responsibility for restitution relating to the read-in charge. Therefore, I suggest that a trial court's personal colloquy with the defendant under *Bangert*[2] additionally establish that the defendant understands and accepts *all* of these conditions, or any others which might apply.

This procedure can minimize the number of post-conviction motions and appeals challenging a trial court's use of a read-in charge. And, even where such motion or appeal is brought, the judicial resolution of the issue will often be facilitated.

---

[2] *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986).