ANN WALSH BRADLEY, J.
¶ 54. (concurring). I agree with the majority that the circuit court did not erroneously exercise its discretion when it denied the defendant's postconviction motion for plea withdrawal without an evidentiary hearing. Majority op. at ¶ 7. The circuit court applied the proper legal standards and engaged in a rational decision-making process. Id.
¶ 55. I write separately, however, to address read-in offenses. The court of appeals observed that "the potential for confusion [] is inherent in the read-in concept." It also described the procedure as "not intuitively obvious," and as containing "a certain inconsistency." State v. Sulla, No. 2013AP2316-CR, unpublished slip op., ¶¶ 12, 15 (Wis. Ct. App. May 21, 2015) (per curiam). I agree.
¶ 56. The confusion is only exacerbated when defendants consent to have a charge read-in, but continue to proclaim their innocence of that charge. In those situations, greater attention need be employed by the court and counsel to ensure a constitutionally valid plea.
¶ 57. Accordingly, I recommend a better practice. Given the potential for confusion and the uncertainties detailed below, I urge circuit courts and counsel to make additional efforts to guarantee that defendants *262 understand all the consequences of read-in charges, ensuring that the plea is knowingly, intelligently, and voluntarily made.
I
¶ 58. A brief history of the read-in procedure is helpful in explaining why it poses a challenge today. This court first used the term "read-in" in Austin v. State, 49 Wis. 2d 727, 183 N.W.2d 56 (1971).[1] In that case, the court examined the validity of plea bargains involving read-in charges, focusing on the subsequent immunity granted to defendants. It first explained the read-in procedure, noting that the "admitted uncharged offenses" expose a defendant to a longer sentence:
Under our read-in procedure, the defendant does not plead to any charges and therefore is not sentenced on any of the read-in charges but such admitted uncharged offenses are considered in sentencing him on the charged offense. Thus under the read-in procedure, the defendant does not run the risk of consecutive sentences or even concurrent sentences. His only risk is a longer sentence for the crime charged but this sentence cannot exceed the maximum.
Id. at 732.
*263 ¶ 59. The court then observed that the read-in procedure was an outgrowth of English common law which permitted consideration of uncharged offenses at the request of the accused (referred to as the practice of "taking into account"). Id. English practice was to refrain from subsequently prosecuting offenses that had been taken into account. Id. Relying on notions of fairness, the Austin court determined that this practice constituted good public policy and upheld the read-in procedure. Id. at 736.
¶ 60. Since Austin, the idea that read-in charges were "admitted" was included in multiple opinions. See, e.g., State v. Lackershire, 2007 WI 74, ¶ 27 n.7, 301 Wis. 2d 418, 734 N.W.2d 23 ("When charges are read in during sentencing, the defendant admits to having committed the underlying crimes, but does not plead guilty to the charges, and therefore is not sentenced for those charges."); State v. Martel, 2003 WI 70, ¶ 21, 262 Wis. 2d 483, 664 N.W.2d 69 ("offenses that are dismissed and read in are admitted by the defendant for purposes of consideration at sentencing on the crime or crimes for which the defendant is convicted"); State v. Floyd, 2000 WI 14, ¶ 25, 232 Wis. 2d 767, 606 N.W.2d 155 ("Read-ins constitute admissions by the defendant to those charges."); In Interest of R.W.S., 162 Wis. 2d 862, 866 n.1, 471 N.W.2d 16 (1991) (" [The defendant] is not sentenced on these read-in charges, but these admitted, uncharged offenses are considered in sentencing him or her on the charged offense.").
¶ 61. However, as this court has acknowledged, Austin did not state that a defendant's admission was required for Wisconsin's read-in procedure. State v. Straszkowski, 2008 WI 65, ¶ 68, 310 Wis. 2d 259, 750 N.W.2d 835. Further, some cases "describe the defendant's admission of a read-in charge not as an actual *264 admission of guilt but rather as an admission as a matter of law that the defendant makes simply by agreeing to read in a dismissed charge." Id., ¶¶ 69-73 (citing State v. Cleaves, 181 Wis. 2d 73, 510 N.W.2d 143 (Ct. App. 1993); State v. Szarkowitz, 157 Wis. 2d 740, 753, 460 N.W.2d 819 (Ct. App. 1990)). Other cases described the read-in procedure without making reference to the defendant's actual or deemed admission of guilt. Martinkoski v. State, 51 Wis. 2d 237, 186 N.W.2d 302 (1971); Embry v. State, 46 Wis. 2d 151, 174 N.W.2d 521 (1970).
¶ 62. In 1995, the legislature incorporated a reference to read-in procedures into the statute governing restitution, Wis. Stat. § 973.20. Specifically, it drafted subsection (lg) to insert a definition of "read-in crime" into the restitution statute and add provisions making it clear that restitution could be ordered for those crimes. The preliminary draft assumed that a read-in crime required an admission by the defendant:
"Read-in crime" means any crime that is uncharged, that the defendant admits to having committed and that the court considers at the time of sentencing the defendant for the crime for which the defendant was convicted.
1995 A.B. 467, § 3, LRB-0353/1.
¶ 63. However, as detailed in Strazkowski, the Department of Justice (DOJ) objected to this definition, asserting that it was inconsistent with the law on read-ins. 310 Wis. 2d 259, ¶¶ 82-83 (citing Correspondence/Memorandum: Department of Justice, Aug. 11, 1995, in Bill Drafting File 1995 Wis. Act 141). It proposed an alternative definition that would *265 not require an admission by the defendant.[2] The Legislature ultimately adopted the DOJ's proposed language. See Wis. Stat. § 973.20(lg)(b).
¶ 64. After reviewing the case law and this legislative history, Straszkowski directly addressed whether a defendant is deemed to have admitted or is required to admit guilt when a plea includes a read-in charge. Observing that "this court has not necessarily been consistent in describing read-in offenses," and that the restitution statute, Wis. Stat. § 973.20(lg), "makes no reference to any sort of admission, whether actual or deemed," it determined that no admission of guilt was required or presumed for read-in purposes. 310 Wis. 2d 259, ¶¶ 85, 88, 92.
¶ 65. Straszkowski advised that "prosecuting attorneys, defense counsel, and circuit courts should hereafter avoid (as they did in the instant case) the terminology 'admit' or 'deemed admitted' in referring to or explaining a defendant's agreement to read in charges." Id., ¶ 94. Further, it specifically withdrew language in the case law "that may be read as intimating that when a charge is read in a defendant must admit or is deemed to admit the read-in charge for sentencing purposes." Id., ¶ 95.
*266 ¶ 66. The only substantive court discussion of read-in procedures since Straszkowski is contained in State v. Frey, 2012 WI 99, 343 Wis. 2d 358, 817 N.W.2d 436. In that case, the court addressed whether a circuit court could consider dismissed charges in imposing sentences when they were not read-in. Id. Its analysis repeated Straszkowski's discussion of read-in procedures and explained how they differed from charges that are dismissed. Id., ¶¶ 63-73, 77-80.
II
¶ 67. Although Straszkowski clarified part of the read-in procedure, it remains a thorny concept. The circuit court in this case was correct when it stated that counsel's explanation of a read-in charge—that it was not an admission of guilt, but something that the court would look at during sentencing—was an "accurate statement!] of law." Further, it correctly described the Plea Questionnaire/Waiver of Rights form as "legally proper."[3] However, even as such understandings prevail, there is a lack of clarity when it comes to the application of read-in procedures, especially in the context of a defendant's assertion of innocence.
¶ 68. Confusion from the bar and the bench regarding read-in procedures persists, as is reflected in unpublished opinions from the court of appeals.[4] *267 Doubtlessly some of this confusion stems from the fact that Straszkowski withdrew language from our precedent that some courts had been following for decades.[5] And as I review plea and sentencing transcripts, it appears that courts and counsel continue to rely on now withdrawn language from past precedent.
¶ 69. Given the red flags raised by the court of appeals' admonitions that the read-in procedure is not intuitively obvious and contains the potential for inconsistency and inherent confusion, sentencing courts and practitioners may need to take special care with read-in charges, especially in the context of protestations of innocence.
¶ 70. Previously a unanimous court of appeals voiced concerns about the need to ensure a defendant properly understands the consequences of a read-in charge. Cleaves, 181 Wis. 2d at 80 n.l. In his concurrence, Judge Nettesheim recommended that circuit *268 courts engage in a personal colloquy to establish that the defendant understands all of the consequences of a read-in charge that may apply. Id. at 81 (Nettesheim, J. concurring) (emphasis in original). I resurrect that recommendation.
¶ 71. Further, I acknowledge that uncertainties, not previously addressed by this court, continue to linger. We have advised that "the circuit court may consider the read-in charge when imposing a sentence." Straszkowski, 310 Wis. 2d 259, ¶ 93 (emphasis added). Similarly, the majority declares that "the read-in charge will be considered by the sentencing court." Majority op., ¶ 35 (emphasis added). Yet we do not explain how read-ins should be considered when defendants maintain their innocence.
¶ 72. The absence of guidance in this area is particularly striking considering the wealth of information that has been provided in the somewhat analogous situation of an Alford plea.[6] In both situations, defendants protest their innocence, but nevertheless can acquiesce to the possibility of serving a prison sentence for the offense.
¶ 73. Given the rights that a defendant relinquishes when entering an Alford plea, special care is taken to ensure that such a plea is knowing, intelligent, and voluntary.[7] For instance, the Wisconsin Jury *269 Instructions recommend that courts address "special questions to defendants to assure that they understand that if the plea is accepted, an unequivocal criminal judgment will be entered — a judgment that will allow imposition of the same penalties that could follow regular guilty plea." Wis. JI-Criminal SM-32A at 12 (1995).
f 74. It advises the court to "ask defense counsel to make a statement on the record to show that the nature and consequences of the Alford plea were thoroughly discussed with the defendant and what the defendant's understanding of that discussion was." Id. at 12. It also provides a script for courts to use when accepting Alford pleas. Id. at 13-14. These safeguards ameliorate the uncomfortable fit of accepting a guilty plea while the defendant protests innocence. State v. Garcia, 192 Wis. 2d 845, 858, 532 N.W.2d 111 (1995).
¶ 75. To further protect defendants entering Alford pleas, we require strong evidence of guilt before a court can accept such a plea. Id., at 857. This court has provided detailed guidance clarifying that standard, explaining that it falls between "beyond reasonable doubt" and the proof necessary to meet the factual basis requirement behind a guilty plea:
The requirement of a higher level of proof in Alford pleas is necessitated by the fact that the evidence has to be strong enough to overcome a defendant's "protestations" of innocence. Although strong proof of guilt is less than proof beyond a reasonable doubt, State v. Spears, 147 Wis. 2d 429, 435, 433 N.W.2d 595 (Ct. App. 1988), it is clearly greater than what is needed to meet the factual basis requirement under a guilty plea.
*270 State v. Smith, 202 Wis. 2d 21, 27, 549 N.W.2d 232 (1996) (internal citation omitted).[8] No similar guidance is available for courts struggling with how to consider a read-in charge when the defendant maintains innocence.
¶ 76. With our current precedent, courts and defense attorneys can give advice that is "proper" and "legally accurate," even though it fails to address the ambiguities in the read-in procedure. When defendants maintain their innocence of read-in charges, it remains uncertain how those charges will be considered. How much weight should a sentencing court accord to those read-in charges? Are there circumstances where they are not entitled to any weight? Should this court adopt the strong proof requirement set forth in Smith, 202 Wis. 2d at 27, and Garcia, 192 Wis. 2d at 857-58?
f 77. I am mindful of the legal landscape allowing sentencing courts to consider all relevant information, including dismissed, uncharged, and unproven offenses. Frey, 343 Wis. 2d 358, ¶¶ 45-47. Nevertheless, it is not always clear how to reconcile the concept of being able to lengthen a prison sentence for an *271 offense where a defendant maintains innocence with the underpinnings of our system of justice. Those underpinnings include the presumption of innocence, the privilege against self-incrimination, the right to confront one's accuser, and the right to present a defense. State v. Hampton, 2004 WI 107, ¶ 22, 274 Wis. 2d 379, 683 N.W.2d 14. Absent clarification on how sentencing courts should consider read-in charges where defendants maintain their innocence, this tension remains unaddressed.
hH 1 — I I — I
¶ 78. An antidote to the confusions and uncertainties that attend a read-in offense which is accompanied with a protestation of innocence, lies in giving the defendant more information. I urge circuit courts and counsel to make additional efforts to guarantee that defendants understand all the consequences of read-in charges, ensuring that the plea is knowingly, intelligently, and voluntarily made. Accordingly, I respectfully concur.
f 79. I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this concurrence.

 Although Austin was the first case from this court to use the term "read in," a few earlier cases described the procedure. See, e.g., Embry v. State, 46 Wis. 2d 151, 158, 174 N.W.2d 521 (1970) ("Upon agreement between the state and the accused, the judge may take these [dismissed] offenses into consideration and the prosecution agrees not to prosecute."); State v. Smith, 45 Wis. 2d 39, 42, 172 N.W.2d 18 (1969) ("In the instant case the defendant voluntarily agreed to allow the judge to consider unproven offenses so that, should the state later attempt to prosecute him, he could successfully assert the defense of double jeopardy.").

 The Department of Justice proposed the following language:
"Read-in" means any crime that is uncharged or which is dismissed as part of a plea agreement, that the defendant agrees to he considered by the court at sentencing and that the court considers at the time of sentencing the defendant for the crime for which the defendant was convicted.
Correspondence/Memorandum: Department of Justice, Aug. 11,1995, at 2, in Bill Drafting File 1995 Wis. Act 141 (emphasis in original).

 The Plea Questionnaire/Waiver of Rights form advises defendants that "the judge may consider read-in charges when imposing sentence. . . ."

 See, e.g., State v. Triplett, No. 2014AP2825-CR (Wis. Ct. App. Apr. 14, 2016) (decision on publication pending) (counsel allegedly told defendant that "the read-in charges could not [be] considered by the judge at sentencing because he was not admitting to the read-in offenses"); State v. Buckles, No. 2014AP2717-CR, unpublished slip op., ¶ 9 (Wis. Ct. App. Nov. *267 10, 2015) (attorney advised defendant that "the read-in offenses could be used by the State for restitution purposes only and not as "aggravating" factors during sentencing"); State v. Clayton-Jones, No. 2010AP2239-CR, unpublished slip op., ¶ 32 (Wis. Ct. App. Dec. 15, 2011) ("what neither [the defendant] nor our own non-exhaustive review of the case law makes clear is what must minimally occur before alleged conduct is treated as a 'read-in' for purposes of the Wisconsin rule prohibiting a future prosecution.").

 See, e.g., State v. Cleaves, 181 Wis. 2d 73, 79, 510 N.W.2d 143 (Ct. App. 1993) (observing that the defendant's " 'admission' to the charges came when he allowed the dismissed crimes to be 'read in.'"); State v. Mattes, 175 Wis. 2d 572, 581, 499 N.W.2d 711 (Ct. App. 1993) (describingread-ins as "admitted uncharged offense [s]"); State v. Szarkowitz, 157 Wis. 2d 740, 753, 460 N.W.2d 819 (Ct. App. 1990) (relying on Austin for the conclusion that "In Wisconsin, when a defendant agrees to crimes being read in at the time of sentencing, he makes an admission that he committed those crimes.").

 The term "Alford plea" refers to the practice where "the defendant pleads guilty while either maintaining his innocence or not admitting having committed the crime." State v. Garcia, 192 Wis. 2d 845, 856, 532 N.W.2d 111 (1995). It is named after a United States Supreme Court case which determined that the practice was constitutional, North Carolina v. Alford, 400 U.S. 25 (1970).

 The rights waived by entering an Alford plea include "the privilege against self-incrimination, the right to a trial by jury, *269 and the right to confront one's accusers." State v. Hampton, 2004 WI 107, ¶ 22, 274 Wis. 2d 379, 683 N.W.2d 14.

 State v. Spears, 147 Wis. 2d 429, 435, 433 N.W.2d 595 (Ct. App. 1988), similarly described the concept of "strong proof of guilt":
First, it is not the equivalent of proof beyond a reasonable doubt. Indeed, the court suggested that the trial court's conclusion in that case that there was a factual basis for the plea "was equivalent to a finding that the proof of guilt was strong." Second, the Johnson court framed the inquiry as whether the record "indicates that a sufficient factual basis was established at the plea proceeding to substantially negate [the] defendant's claim of innocence."
(citing State v. Johnson, 105 Wis. 2d 657, 664, 314 N.W.2d 897 (Ct. App. 1981)).