# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP2316-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |           Plaintiff-Respondent-Petitioner, |
| |    v. |
| | Richard J. Sulla, |
| |           Defendant-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 364 Wis. 2d 405, 866 N.W.2d 404)
(Ct. App. 2015 – Unpublished)

| | |
|---|---|
| OPINION FILED: | June 14, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 20, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Jefferson |
|   JUDGE: | David J. Wambach |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | BRADLEY, A. W., J. and ABRAHAMSON, J. concur (Opinion filed). |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-respondent-petitioner, the cause was argued by *Anne C. Murphy*, assistant attorney general, with whom on the briefs was *Brad D. Schimel*, attorney general.

For the defendant-appellant there was a brief by *Scott A. Szabrowicz*, Greenfield. Oral argument by *Scott A. Szabrowicz*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2013AP2316-CR
(L.C. No. 2011CF221)

STATE OF WISCONSIN           :        IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent-Petitioner,**

  **v.**

**Richard J. Sulla,**

      **Defendant-Appellant.**

**FILED**

**JUN 14, 2016**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 MICHAEL J. GABLEMAN, J. This is a review of an unpublished decision of the court of appeals,[1] which reversed the Jefferson County Circuit Court's[2] order denying Richard Sulla's ("Sulla") postconviction motion to withdraw his no contest pleas.

¶2 This case requires us to examine the circumstances under which a circuit court may deny a defendant's

---

[1] State v. Sulla, No.2013AP2316-CR, unpublished slip op. (Wis. Ct. App. May 21, 2015) (per curiam).

[2] The Honorable David J. Wambach presided over the postconviction motion hearing.

postconviction motion for plea withdrawal without holding an evidentiary hearing. Specifically, we consider whether a circuit court may, without holding an evidentiary hearing, deny a defendant's motion to withdraw his plea when the defendant alleges that his plea was not knowing, intelligent, and voluntary because he did not understand the effect a read-in charge could have at sentencing.

¶3 The State brought four charges against Sulla in Jefferson County relating to two burglaries and an arson. Sulla and the State entered into a plea agreement, under which Sulla would plead no contest to Counts 1 and 3, while Counts 2 and 4 would be dismissed and read into the record for purposes of sentencing and restitution.[3] Prior to entering his plea, Sulla read and signed a Plea Questionnaire/Waiver of Rights form, and the circuit court held a plea hearing.[4] At the plea hearing, the

---

[3] The State charged Sulla with the following:

1. <u>Count 1</u>: Burglary, arming oneself with a dangerous weapon, contrary to Wis. Stat. §§ 943.10(2)(b) and 939.62(1)(c)

2. <u>Count 2</u>: Conspiracy to commit arson, contrary to Wis. Stat. §§ 943.02(1)(a), 939.31, and 939.62(1)(c)

3. <u>Count 3</u>: Burglary, contrary to Wis. Stat. §§ 943.10(1m)(a) and 939.62(1)(c); and

4. <u>Count 4</u>: Operating a motor vehicle without the owner's consent, as a party to a crime, contrary to Wis. Stat. §§ 943.23(2), 939.05, and 939.62(1)(b).

[4] The Honorable Jacqueline R. Erwin presided over the plea hearing and the sentencing hearing.

court concluded that Sulla's pleas were made in a knowing, intelligent, and voluntary fashion, and it ordered judgments of guilt be entered accordingly. The court then held a sentencing hearing and, after extensive discussion, sentenced Sulla to 15 years imprisonment, consisting of 7.5 years of initial confinement and 7.5 years of extended supervision for Count 1, and 5 years imprisonment, consisting of 2.5 years of initial confinement and 1.5 years of extended supervision for Count 3. The court ordered the sentences to run consecutively to one another and to all other sentences.

¶4 Sulla filed a motion for postconviction relief, seeking to withdraw his no contest pleas on the basis that his pleas were not made in a knowing, intelligent, and voluntary fashion. Sulla claimed that his pleas were unknowing because he "did not understand that for purposes of the read-in charge, he would effectively be considered to have committed the offense." To support his motion, Sulla filed an affidavit, which stated, in pertinent part, "[M]y attorney [] told me that agreeing to the read-in offense of arson was not admitting guilt and that it was just something the Court would 'look at' at sentencing. I did not understand and my Attorney did not explain the effect that a read-in offense has . . . ." In short, Sulla claimed that he was misinformed by his attorney and that because he was misinformed, he did not understand the effect the read-in charges would have at sentencing.

¶5 The postconviction court denied Sulla's motion to withdraw his plea without first holding an evidentiary hearing.

3

The court concluded that Sulla was not entitled to an evidentiary hearing on his motion because his affidavit failed to allege sufficient facts which, if true, would entitle Sulla to relief. In addition, the postconviction court found that Sulla was not entitled to an evidentiary hearing because the record conclusively demonstrated that Sulla was not entitled to relief. The court of appeals reversed, concluding that Sulla's motion did allege sufficient facts and further concluding that Sulla was entitled to an evidentiary hearing because the record did not conclusively demonstrate that Sulla understood the effect of the read-in charges at sentencing. The State appealed.

¶6  The issue before us is whether the postconviction court was required to hold an evidentiary hearing before it determined whether Sulla had entered his pleas in a knowing, intelligent, and voluntary fashion. To address this issue, we apply the test set forth in Nelson v. State, 54 Wis. 2d 489, 195 N.W.2d 629 (1972), and refined in State v. Bentley, 201 Wis. 2d 303, 548 N.W.2d 50 (1996) (hereinafter "Nelson/Bentley"). Nelson/Bentley instructs that "if a motion to withdraw a guilty plea after judgment and sentence alleges facts which, if true, would entitle the defendant to relief, the trial court must hold an evidentiary hearing." State v. Bentley, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996) (quoting Nelson v. State, 54 Wis. 2d 489, 497-98, 195 N.W.2d 629 (1972). However, "if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its

4

legal discretion deny the motion without a hearing." Id. at 310 (quoting Nelson, 54 Wis. 2d at 497-98).

¶7   We conclude that the postconviction court was not required to hold an evidentiary hearing before it determined whether Sulla had entered his pleas in a knowing, intelligent, and voluntary fashion. Here, the postconviction court properly exercised its discretion when it denied Sulla's postconviction motion to withdraw his plea without first holding an evidentiary hearing because it applied the proper legal standard, examined the relevant facts, and engaged in a rational decision making process. Moreover, when we apply the Nelson/Bentley test to this case, we conclude that Sulla is not entitled to an evidentiary hearing on his postconviction motion to withdraw his plea. The record in this case, specifically the Plea Questionnaire/Waiver of Rights form and the transcripts from the plea hearing and the sentencing hearing, conclusively demonstrates that Sulla is not entitled to relief because he was correctly informed of and understood the effect of the read-in charges at sentencing.[5]

---

[5] Sulla also raises issues related to judicial bias and ineffective assistance of counsel in his briefing; however, these arguments were not raised in the petition for review. We did not order that any issues presented outside of the petition for review be granted and briefed. Therefore, we do not address Sulla's additional arguments. See Jankee v. Clark Cty., 2000 WI 64, ¶7, 235 Wis. 2d 700, 612 N.W.2d 297 ("Generally, a petitioner cannot raise or argue issues not set forth in the petition for review unless the court orders otherwise. If an issue is not raised in the petition for review or in a cross petition, 'the issue is not before us.'" (citation and footnote omitted) (quoting State v. Weber, 164 Wis. 2d 788, 791 n.2, 476 N.W.2d 867 (1991) (Abrahamson, J., dissenting))).

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   Charging and Plea Bargaining

¶8   On July 26, 2011, the State charged Sulla with two counts of burglary, one count of conspiracy to commit arson, and one count of party to the crime of operating a motor vehicle without the owner's consent, all as a repeat offender. Sulla, if convicted of each count, would have faced a maximum period of imprisonment of 95 years and 6 months.[6] Despite initially pleading not guilty on all four counts, Sulla later entered into a plea deal with the State. In exchange for pleading no contest to Count 1 (armed burglary) and Count 3 (burglary), the State agreed to dismiss but have read into the record Count 2 (arson) and Count 4 (operating motor vehicle without consent). Sulla's plea deal decreased his maximum period of imprisonment to 39 years and 6 months.

¶9   Prior to entering his plea, Sulla read and signed a Plea Questionnaire/Waiver of Rights form. A list of "Understandings" on the form included a statement addressing read-in charges:

---

[6] For Count 1 (armed burglary), Sulla could have been imprisoned not more than 15 years plus a 6 year repeat offender enhancer. For Count 2 (arson), Sulla could have been imprisoned not more than 40 years plus a 6 year repeat offender enhancer. For Count 3 (burglary), Sulla could have been imprisoned not more than 12 years and 6 months plus a 6 year repeat offender enhancer. For Count 4 (operating a vehicle without consent), Sulla could have been imprisoned not more than 6 years plus a 4 year repeat offender enhancer. Adding all four counts together totals 95 years and 6 months.

I understand that if any charges are read-in as part of a plea agreement they have the following effects:

- Sentencing——although the judge may consider read-in charges when imposing sentence, the maximum penalty will not be increased.

- Restitution——I may be required to pay restitution on any read-in charges.

- Future prosecution——the State may not prosecute me for any read-in charges.

Sulla signed the Plea Questionnaire/Waiver of Rights form, acknowledging, "I have reviewed and understand this entire document and any attachments. I have reviewed it with my attorney . . . . I have answered all questions truthfully and either I or my attorney have checked the boxes. I am asking the court to accept my plea and find me guilty." Sulla's attorney also signed the Plea Questionnaire/Waiver of Rights form, acknowledging, "I am the attorney for the defendant. I have discussed this document and any attachments with the defendant. I believe the defendant understands it and the plea agreement. The defendant is making this plea freely, voluntarily, and intelligently. I saw the defendant sign and date this document."

## B.  Plea Hearing

¶10 On April 10, 2012, the circuit court held a plea hearing. At the plea hearing, the court specifically discussed read-in charges——and their effect at sentencing——with Sulla:

THE COURT: Mr. Sulla, I understand that of the four counts made against you, you intend to withdraw your not guilty pleas and instead plead no contest to crimes in Counts 1 and 3 called armed burglary and burglary both as habitual criminals.  Is that right?

7

SULLA: Yes, ma'am.

THE COURT: <u>And then you expect that both sides will ask me to dismiss Counts 2 and 4,</u> conspiracy to commit arson and operating motor vehicle without owner's consent, again both as habitual criminal, <u>but have me consider those offenses when I sentence you, also true?</u>

SULLA: <u>Yes, ma'am.</u>

(Emphasis added.) As part of the plea hearing, the circuit court also confirmed that Sulla had an opportunity to discuss his plea with his attorney:

THE COURT: So Mr. Sulla, have I correctly stated the representation that the State's attorney has made to you regarding the State's recommendations?

SULLA: Yes, ma'am.

THE COURT: Have you had enough time with Mr. De La Rosa?[7]

SULLA: Yes, ma'am.

THE COURT: He's told you and you've--you understand from him that I don't have to follow that recommendation or your recommendation or anyone's recommendations in these cases, don't you?

SULLA: Yes, ma'am.

In addition, the court warned Sulla that regardless of the recommendation made by the State, the court could award the maximum statutory sentence:

THE COURT: In fact, on Count 1, I could order imprisonment up to 21 years and up to $50,000 in fines and on Count 3, I could order imprisonment up to 18 1/2 years and up to $25,000 in fines, so regardless of

---

[7] Attorney Jeffery De La Rosa represented Sulla at his plea hearing.

8

the recommendations, my authority is to--for a total of 39 1/2 years imprisonment and $75,000 in fines; do you understand my sentencing authority?

SULLA: Yes, ma'am.

Finally, the court confirmed that Sulla read, understood, and signed the Plea Questionnaire/Waiver of Rights form:

THE COURT: I was reading in part from a yellow document called plea questionnaire and waiver of rights and I see Mr. De La Rosa's signature on it from this morning. I recognize it. Did you also sign it this morning?

SULLA: Yes, ma'am.

THE COURT: Before you did, did you read and understand it?

SULLA: Yes, ma'am.

THE COURT: There is another document that you and Mr. De La Rosa filed with it and it is called a felony element of criminal offenses. Did you read it before you signed this yellow document?

SULLA: Yes, ma'am.

THE COURT: Did you understand everything in both papers?

SULLA: Yes, ma'am.

After finishing the plea colloquy, the court found that Sulla's pleas were made in a knowing, intelligent, and voluntary fashion. Specifically, the court stated,

These pleas are knowing, voluntary, and intelligent. They and the dismissed charges are sufficiently supported by fact. I accept the pleas, find the defendant to be a habitual criminal. Find him guilty as he's charged in Counts 1 and 3 and on the request of both parties and for the reasons provided by the district attorney, dismiss Counts 2 and 4. I'll consider them at sentencing. I order that judgment enter.

9

(Emphasis added.) The case then proceeded to sentencing.

### C. Sentencing Hearing

¶11 The circuit court held a sentencing hearing on May 15, 2012. At the sentencing hearing, the court explained the effect that the read-in arson charge would have on its sentencing determination for Count 1:

> I want to say two things. One is, <u>you asked me to dismiss it and consider it as a read-in. So I'm going to.</u> I'm not going to consider that you are uninvolved with it. You gave me a victim--you gave me a plea questionnaire that says that <u>you understand that</u> if charges are read in as part of the plea agreement they have the following effect; <u>at sentencing, the judge may consider read-in charges when imposing sentence, but the maximum penalty will not be increased and that you might be required to pay restitution for read-in charges and that the State can't prosecute you separately for it in the future</u>.
>
> The second consideration I have of the arson is that, let's say for argument purposes that you were in Michigan at the time of the arson, that you were non-participatory in the torching altogether. As far as I can tell from your statement, the arson followed the burglary that you were involved with. And so it followed that felony.

(Emphasis added.)

¶12 After discussing several other sentencing factors,[8] such as Sulla's age, his 18 previous convictions, and the nature

---

[8] The circuit court methodically applied the sentencing factors set forth in State v. Gallion, 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197, stating, "As always, the Court considers three categories, three factors in any sentence. One is the character of the defendant. Another is the nature and gravity of the crimes and a third is the need for public protection. And I'll do that here and I'll do it in about that series."

of his crime, the court sentenced Sulla to a total of 20 years, which is nearly half the maximum period of imprisonment (39 years and 6 months).[9] On Count 1, Sulla received 15 years imprisonment, consisting of 7.5 years of initial confinement and 7.5 years of extended supervision. On Count 3, Sulla received 5 years imprisonment, consisting of 2.5 years of initial confinement and 1.5 years of extended supervision. The court ordered the sentences to run consecutively to one another and to all other sentences.

### D. Postconviction Motion and Hearing

¶13 On August 5, 2013, Sulla filed a motion to withdraw his plea[10] on the basis that his plea was not knowing, intelligent, and voluntary because he did not understand the effect a read-in charge could have at sentencing.[11] To support his motion, Sulla submitted an affidavit, which stated, in pertinent part,

> [M]y Attorney De La Rosa told me that agreeing to the read-in offense of arson was not admitting guilt and that it was just something the Court would "look at"

---

[9] Before imposing its sentence, the circuit court asked Sulla if "there was anything [he] would like to say." Sulla took the opportunity to comment on his criminal history and to apologize to the victims. At no point did Sulla ask for clarification regarding his plea agreement or the effect a read-in charge could have on his sentence.

[10] Sulla brought his motion for postconviction relief pursuant to Wis. Stat. § 809.30.

[11] Attorney Scott A. Szabrowicz has continued to represent Sulla throughout Sulla's postconviction proceedings.

11

at sentencing. I did not understand and my Attorney did not explain the effect that a read-in offense has because Attorney De La Rosa did not explain it to me. In fact, I did not commit the arson and if I had known that it was going to be considered as a negative at my sentencing I would not have entered the no contest plea.

¶14 On September 6, 2013, the court held a postconviction motion hearing. Ultimately the court, without holding an evidentiary hearing, denied Sulla's motion to withdraw his plea. Applying the two-part test set forth in Nelson/Bentley, the postconviction court concluded that Sulla was not entitled to an evidentiary hearing on his motion for plea withdrawal because (1) Sulla's motion failed to alleged sufficient facts which, if true, would have entitled Sulla to relief and (2) even if Sulla's motion had alleged sufficient facts, the record conclusively demonstrated that Sulla was not entitled to relief because he was correctly informed of and thus understood the effect of the read-in charges at sentencing.

¶15 Regarding the first prong of Nelson/Bentley, the postconviction court reasoned,

Counsel was not deficient in his performance, vis-à-vis the need to sufficiently advise/appraise the defendant of the import of the arson read-in. Even if you consider the affidavit of the defendant, he claims that counsel told him he "was not admitting guilt and that it [the arson] was just something the court would 'look at' at sentencing." Those are accurate statements of the law. The court would not find him guilty of the arson for purposes of exposure to a sentence on that offense and "look at" is another way to describe "consider". This court finds the allegation does not even rise to the level of deficiency.

12

(Alterations in original.) Regarding the second prong of <u>Nelson/Bentley</u>, the postconviction court explained,

> Before the court even undertook a colloquy with the defendant, the defendant's counsel went through two documents with him . . . . The first is the Modified Criminal Case Settlement form . . . . That document bears the signature of both the defendant and counsel. That exhibit clearly notes that the defendant would be responsible for restitution in the two amounts listed, which total $462,070.00. This document alone completely undercuts the claim that he did not know that the court would consider he committed the arson; otherwise how do you get to that amount of restitution without being held responsible for the arson? You can't. . . .

> The court additionally finds that . . . the Plea Questionnaire/Waiver of Rights form has a section on the back side entitled, "Understandings". The second to last bullet in that box gives a legally proper and sufficient explanation of how read-in offenses will be considered by the sentencing court. Even the defendant does not allege that they are deficient in any way and the court finds and concludes that they are not (see the Wisconsin Judicial Benchbook-Page 43-7, 2013 version and <u>State v. Frey</u> ¶62-77). Nor does the defendant allege that he did not sign the waiver of rights form with his attorney . . . . The defendant's signature lies beneath a segment of language entitled, "Defendant's Statement" which reads in pertinent part that he has "reviewed and understand[s] this entire document" which obviously would include the section and bullet described above. But the record and this court's findings in this regard do not stop there.

> At the plea hearing, the transcript reveals . . . that the defendant did understand the court could consider his culpability as to the arson in crafting [his] sentence under his pleas to count one and three. Plea hearing TR. P.3 l.4-10; p.4 l.6-8 as well as l.22-25; p.5 l.1-5 as well as l.11-13; p.7 l.7-9; and p.10 l.5-8. Those references clearly and conclusively demonstrate that the court's colloquy with the defendant established that he knew that [the

13

sentencing court] would consider [the read-ins] . . . .

¶16 Throughout its analysis, the court highlighted several specific facts: (1) Sulla agreed to have the arson charge read into the record, (2) the read-in charge allowed Sulla to avoid significant prison exposure from the arson charge, (3) Sulla signed the Plea Questionnaire/Waiver of Rights form, which explicitly informed Sulla that the court could consider the read-in charges for purposes of sentencing and restitution, and (4) the court at the plea hearing asked Sulla if he understood that the read-in charges would be dismissed but read into the record for consideration at sentencing, and Sulla said he understood. Further, the postconviction court noted that under this court's precedent, the sentencing court could have considered the conduct underlying the arson charge even if the charge had been dismissed or if Sulla had been acquitted of the charge:

> [T]he sentencing court could, in an exercise of discretion[,] consider[] [that] he "committed" the arson offense under the rubric of "character of the accused" even if the state dismissed the count outright or if he had a trial, and the jury acquitted him of the count of arson. Either of those scenarios would put him in exactly the same position he found himself at the original sentencing, in terms of the court's view of his behavior.

¶17 Relying on all of the information outlined above, the court concluded that Sulla understood that the read-in charges would be dismissed but read into the record for purposes of sentencing and restitution. As a result, the court dismissed

14

Sulla's postconviction motion to withdraw his plea without holding an evidentiary hearing. Sulla appealed.

### E. The Court of Appeals' Decision

¶18 The court of appeals reversed and remanded, concluding that Sulla was entitled to an evidentiary hearing to determine whether his pleas were knowing, intelligent, and voluntary. The court of appeals was sympathetic to Sulla's claim that he did not understand the effect of a read-in charge, remarking, "It is not inherently implausible that a defendant would misunderstand the read-in concept. The concept is not intuitively obvious to non-lawyers." State v. Sulla, No.2013AP2316-CR, unpublished slip op., ¶12 (Wis. Ct. App. May 21, 2015) (per curiam).

¶19 Utilizing Nelson/Bentley, the court of appeals first concluded that Sulla's affidavit made a sufficient factual allegation that he did not understand the concept of a read-in charge. Id., ¶¶12-15. The court commented,

> Sulla's allegation that his attorney told him "that agreeing to the read-in offense of arson was not admitting guilt and that it was just something the Court would 'look at' at sentencing" is sufficient to allege why Sulla may not have understood the read-in concept. The alleged statement by counsel contains an ambiguity that . . . adds to the potentially confusing nature of the read-in concept.

Id., ¶13. According to the court of appeals, counsel's use of the word "guilt" created ambiguity: "[T]here are two ways a non-lawyer might plausibly understand [the phrase 'not admitting guilt']. One way is that Sulla was not admitting to committing the act of arson, and the other is that Sulla was not pleading

15

guilty to an actual legal charge for doing that act." Id., ¶15 (emphasis in original). "[G]iven the potential for confusion that is inherent in the read-in concept," the court concluded that "Sulla has alleged sufficient facts that, if true, would entitle him to relief." Id.

¶20 The court of appeals then went on to consider the second prong of Nelson/Bentley——whether the record conclusively demonstrated that Sulla was not entitled to relief. Id., ¶16. The court began its analysis by pointing out what it believed was a "potential inconsistency [] present in the standards described in Bentley." Id., ¶17. It described the "potential inconsistency" as follows:

> [C]ase law requires a hearing to be held if the defendant alleges facts that, if true, would entitle the defendant to relief, but it also allows a hearing to be denied if the record conclusively demonstrates that the defendant is not entitled to relief. These two concepts are potentially in conflict because the former seems to require an evidentiary hearing unconditionally, but the latter provides an option in which it appears that an evidentiary hearing can nonetheless be denied, even when the defendant makes allegations that would entitle him to relief, if true. The relationship of these concepts is not made entirely clear in existing case law.

Id., ¶17. To reconcile this purported inconsistency, the court of appeals invented its own test: "[W]e understand a record to 'conclusively demonstrate' the falsity of a defendant's factual allegations when, even after hearing the expected testimony in support of the postconviction motion at an evidentiary hearing, no reasonable fact-finder could find in the defendant's favor, in light of the rest of the record." Id., ¶18.

16

¶21 Applying its new test, the court of appeals concluded that "while . . . several aspects about the existing record [] cast doubt on the accuracy of Sulla's allegations, none of them rise to the level of making it impossible for a reasonable fact-finder to believe that Sulla failed to properly understand the read-in concept . . . ." Id., ¶21. As a result, the court of appeals remanded for an evidentiary hearing on Sulla's motion to withdraw his plea.

¶22 On June 18, 2015, the State filed a petition for review, which we granted. We now reverse the court of appeals.

## II. STANDARD OF REVIEW

¶23 When examining a defendant's postconviction motion for plea withdrawal, we employ the following standard of review. "[W]hether a defendant's motion to withdraw a guilty plea 'on its face alleges facts which would entitle the defendant to relief' and whether the record conclusively demonstrates that the defendant is entitled to no relief" are questions of law that we review de novo. State v. Howell, 2007 WI 75, ¶78, 301 Wis. 2d 350, 734 N.W.2d 48 (footnotes omitted) (citing Bentley, 201 Wis. 2d at 310); see also State v. Allen, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. However, "if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." Allen, 274 Wis. 2d 568, ¶9 (citing Bentley, 201 Wis. 2d at 310-11; Nelson, 54 Wis. 2d at 497-98). "We review a

17

circuit court's discretionary decisions under the deferential erroneous exercise of discretion standard." Id. "A circuit court properly exercises its discretion when it has examined the relevant facts, applied the proper legal standards, and engaged in a rational decision-making process." Bentley, 201 Wis. 2d at 318. When reviewing a trial court's exercise of discretion, we are permitted to search the record for reasons to sustain such a determination. Klawitter v. Klawitter, 2001 WI App 16, ¶10 n.7, 240 Wis. 2d 685, 623 N.W.2d 169.

### III. DISCUSSION

#### A. General Principles Regarding Plea Withdrawal

¶24 A defendant may withdraw his or her plea either before or after sentencing. State v. Cain, 2012 WI 68, ¶24, 342 Wis. 2d 1, 816 N.W.2d 177. "When a defendant moves to withdraw a plea before sentencing, 'a circuit court should "freely allow a defendant to withdraw his plea . . . for any fair and just reason, unless the prosecution [would] be substantially prejudiced."'" Id. (quoting State v. Jenkins, 2007 WI 96, ¶2, 303 Wis. 2d 157, 736 N.W.2d 24). In contrast, "When a defendant moves to withdraw the plea after sentencing, the defendant 'carries the heavy burden of establishing, by clear and convincing evidence, that the trial court should permit the defendant to withdraw his plea to correct a "manifest injustice."'" Id., ¶25 (quoting State v. Thomas, 2000 WI 13, ¶16, 232 Wis. 2d 714, 605 N.W.2d 836). "One way for a defendant to meet this burden is to show that he did not knowingly, intelligently, and voluntarily enter the plea." State v. Brown,

18

2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906; see also State v. Straszkowski, 2008 WI 65, ¶28, 310 Wis. 2d 259, 750 N.W.2d 835.

¶25 Two legal paths are available to a defendant who seeks to withdraw his plea after sentencing. The first is via a motion made pursuant to State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986). "A defendant invokes Bangert when the plea colloquy is defective . . . ." Howell, 301 Wis. 2d 350, ¶74. The second is through a Nelson/Bentley motion for plea withdrawal. "[A] defendant invokes Nelson/Bentley when the defendant alleges that some factor extrinsic to the plea colloquy, like ineffective assistance of counsel or coercion, renders a plea infirm." Id. Sulla brings his challenge pursuant to Nelson/Bentley;[12] thus, we limit our discussion to the plea withdrawal procedure outlined in Nelson/Bentley.

¶26 The first prong of the Nelson/Bentley test provides: "[I]f a motion to withdraw a guilty plea after judgment and sentence alleges facts which, if true, would entitle the defendant to relief, the trial court must hold an evidentiary hearing." Bentley, 201 Wis. 2d at 309 (alteration in original) (quoting Nelson, 54 Wis. 2d at 497). To meet this first prong, a

---

[12] Sulla does not challenge the court of appeals' classification of his motion as a motion for plea withdrawal under Nelson v. State, 54 Wis. 2d 489, 195 N.W.2d 629 (1972), modified by, State v. Bentley, 201 Wis. 2d 303, 548 N.W.2d 50 (1996). Moreover, Sulla's brief to this court cites exclusively to Nelson/Bentley; it does not cite State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

19

defendant must allege "sufficient material facts" that would allow a reviewing court "to meaningfully assess a defendant's claim." Allen, 274 Wis. 2d 568, ¶23; see also Bentley, 201 Wis. 2d at 314 ("[A] defendant must do more than merely allege that he would have pled differently; such an allegation must be supported by objective factual assertions." (quoting Key v. United States, 806 F.2d 133, 139 (7th Cir. 1986))). Specifically, a defendant should "allege the five 'w's' and one 'h'; that is, who, what, where, when, why, and how." Allen, 274 Wis. 2d 568, ¶23.

¶27 The second prong of Nelson/Bentley provides: "[I]f the defendant fails to allege sufficient facts in his motion to raise a question of fact, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing." Bentley, 201 Wis. 2d at 309-10 (quoting Nelson, 54 Wis. 2d at 497-98).

¶28 In this case, the court of appeals struggled to properly apply Nelson/Bentley. Perhaps this is because the court of appeals neglected to examine any recent case law from this court. Indeed, the only law cited in the court of appeals' opinion is Nelson (1972), Bentley (1996), and Bangert (1986). Absent from the court of appeals' opinion is any reference to our recent explanations of the Nelson/Bentley standard, which include State v. Allen, 2004 WI 106, 274 Wis. 2d 568, 682 N.W.2d 433, State v. Howell, 2007 WI 75, 301 Wis. 2d 350, 734

N.W.2d 48, State v. Straszkowski, 2008 WI 65, 310 Wis. 2d 259, 750 N.W.2d 835, and State v. Frey, 2012 WI 99, 343 Wis. 2d 358, 817 N.W.2d 436.

¶29 Had the court of appeals been so inclined, it could have read and applied these cases, and a costly, time-consuming appeal to this court could have been avoided. Be that as it may, the court of appeals concluded that Nelson/Bentley's two prongs potentially conflict because "the former seems to require an evidentiary hearing unconditionally, but the latter provides an option in which it appears that an evidentiary hearing can nonetheless be denied, even if the defendant makes allegations that would entitle him to relief, if true." Sulla, unpublished slip op., ¶17. A review of our existing case law confirms that we clarified any "potential inconsistency" years ago when we explained,

> Bentley might be interpreted to make an evidentiary hearing mandatory whenever the motion contains sufficient, nonconclusory facts, even if the record as a whole would demonstrate that the defendant's plea was constitutionally sound. Such an interpretation of Nelson and Bentley, however, is not correct. The correct interpretation of Nelson/Bentley is that an evidentiary hearing is not mandatory if the record as a whole conclusively demonstrates that defendant is not entitled to relief, even if the motion alleges sufficient nonconclusory facts.

Howell, 301 Wis. 2d 350, ¶77 n.51; see also id., ¶150-153 (Prosser, J., dissenting) ("Two years ago in [another case], I tried to explain the internal inconsistency I perceived in the Bentley decision. . . . To its credit, the majority opinion corrects this festering problem. . . . The majority's

clarification of the Bentley opinion restores to the circuit court the ability to form its independent judgment [on a Bentley plea withdrawal motion] after a review of the [entire] record and pleadings." (fourth and fifth alterations in original) (quotation marks and citation omitted)).

¶30 To be clear, a circuit court has the discretion to deny a defendant's motion——even a properly pled motion——to withdraw his plea without holding an evidentiary hearing if the record conclusively demonstrates that the defendant is not entitled to relief. With this framework in mind, we move on to consider whether the postconviction court, here, was required to hold an evidentiary hearing on Sulla's motion before it determined whether Sulla had entered his pleas in a knowing, intelligent, and voluntary fashion. To answer this question we must discuss (1) whether Sulla's motion to withdraw his plea alleged facts which, if true, would entitle him to relief; (2) whether the record conclusively demonstrates that Sulla is not entitled to relief; and (3) whether the postconviction court erroneously exercised its discretion when it denied Sulla's postconviction motion to withdraw his plea without holding an evidentiary hearing.

B. Read-in Charges and Their Role at Sentencing

¶31 Before turning to the three considerations listed above, we first take a moment to discuss generally sentencing and the role read-in charges play at sentencing.

¶32 "Wisconsin has a strong public policy that the sentencing court be provided with all relevant information."

22

State v. Frey, 2012 WI 99, ¶45, 343 Wis. 2d 358, 817 N.W.2d 436 (quoting State v. Guzman, 166 Wis. 2d 577, 592, 480 N.W.2d 446 (1992)). Accordingly, a "sentencing court or jury must be permitted to consider any and all relevant information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed." Id. (quoting Wasman v. United States, 468 U.S. 559, 563 (1984)). Notably, we have held that "'a sentencing court may consider uncharged and unproven offenses'" regardless of "whether or not the defendant consents to having the charge read in. Indeed, the court may consider not only 'uncharged and unproven offenses' but also 'facts related to offenses for which the defendant has been acquitted.'" Id., ¶47 (quoting State v. Leitner, 2002 WI 77, ¶45, 253 Wis. 2d 449, 646 N.W.2d 341).

¶33 A read-in charge is any crime "that is uncharged or that is dismissed as part of a plea agreement, that the defendant agrees to be considered by the court at the time of sentencing and that the court considers at the time of sentencing the defendant for the crime for which the defendant was convicted." Wis. Stat. § 973.20(1g)(b).[13] Similar to Wis. Stat. § 973.20(1g)(b), we have defined read-in charges as "charges [that] are expected to be considered in sentencing, with the understanding that read-in charges could increase the sentence up to the maximum that the defendant could receive for

---

[13] Chapter 973 of the Wisconsin Statutes governs sentencing.

the conviction in exchange for the promise not to prosecute those additional offenses." Frey, 343 Wis. 2d 358, ¶68 (citation omitted).[14]

¶34 In Straszkowski, we examined "the history of read-in charges in this state" and set forth the proper procedure trial counsel and circuit courts should undertake when advising defendants about read-in charges. 310 Wis. 2d 259, ¶59. There, the defendant claimed that his plea was not "knowing and intelligent because he was unaware that a charge dismissed but read in under a plea agreement [was] deemed admitted for purposes of sentencing the defendant on the charge to which the defendant pled guilty." Id., ¶2. After analyzing our precedent, we concluded that "Wisconsin's read-in procedure does not require a defendant to admit guilt of a read-in charge for purposes of sentencing and does not require a circuit court to

---

[14] In State v. Frey, 2012 WI 99, 343 Wis. 2d 358, 817 N.W.2d 436, we commented on the benefits both the State and a defendant receive from the read-in charge procedure. 343 Wis. 2d 358, ¶¶69-74. On the one hand, the State "preserves precious prosecutorial resources by not prosecuting other charges," while having the defendant "expose[] himself to the likelihood of a higher sentence within the sentencing range and the additional possibility of restitution for the offenses that are 'read-in.'" Id., ¶¶70, 73. On the other hand, the defendant cleans "his slate of several uncharged crimes with the safety of only receiving at most the maximum sentence on the crimes of which he is convicted and receive[s] immunity from future prosecution of any read-in offense." Id., ¶71 (quotation marks and emphasis omitted) (quoting Embry v. State, 46 Wis. 2d 151, 158, 174 N.W.2d 521).

deem the defendant to admit as a matter of law to the read-in crime for purposes of sentencing." Id., ¶92.

¶35 Consequently, we instructed trial counsel and circuit courts to take the following approach when advising defendants about read-in charges:

> It is a better practice for prosecuting and defense counsel and circuit courts to omit any reference to a defendant admitting a read-in crime, except when the defendant [chooses to] admit guilt, and simply to recognize that a defendant's agreement to read in a charge affects sentencing in the following manner: a circuit court may consider the read-in charge when imposing sentence but the maximum penalty of the charged offense will not be increased; a circuit court may require a defendant to pay restitution on the read-in charges; and a read-in has a preclusive effect in that the State is prohibited from future prosecution of the read-in charge.

Id., ¶93 (footnotes omitted). Put simply, counsel and courts should refrain from advising defendants that a read-in charge necessitates admitting guilt. Id. Instead, counsel and courts should advise defendants that (1) the read-in charge will be considered by the sentencing court, but the maximum penalty will not be increased; (2) the defendant may be required to pay restitution on the read-in charge; and (3) the defendant may not be prosecuted for the read-in charge in the future. Id. With these general principles in mind, we now proceed to address Sulla's claim.

C. Whether Sulla's Motion to Withdraw His Plea Alleged Facts Which, if True, Would Entitle Him to Relief

¶36 Under the first prong of Nelson/Bentley, we examine whether Sulla's motion alleged sufficient facts that, if true,

25

would entitle Sulla to relief. Bentley, 201 Wis. 2d at 309 (quoting Nelson, 54 Wis. 2d at 497). As noted previously, for a motion to be sufficient, it must "allege the five 'w's' and one 'h'; that is, who, what, where, when, why, and how." Allen, 274 Wis. 2d 568, ¶23. These "five w's' and one 'h'" make it so that a reviewing court has enough sufficient facts that it can "meaningfully assess a defendant's claim." Id.

¶37 Sulla's affidavit stated, in pertinent part,

> [M]y attorney De La Rosa told me that agreeing to the read-in offense of arson was not admitting guilt and that it was just something the Court would 'look at' at sentencing. I did not understand and my Attorney did not explain the effect that a read-in offense has because Attorney De La Rosa did not explain it to me.

At its core, Sulla's motion to withdraw his plea and his accompanying affidavit allege that, in spite of Attorney De La Rosa specifically informing Sulla that the sentencing court would "look at" (or consider) the read-in charge for the purpose of sentencing, Sulla did not understand that the circuit court would consider the read-in charges for purposes of imposing a sentence.

¶38 The problem with Sulla's claim is that Attorney De La Rosa's alleged statement "that agreeing to the read-in offense of arson was not admitting guilt and that it was just something the Court would 'look at' at sentencing" is a correct statement of the law under Straszkowski and Frey. As we noted in both Straszkowski and Frey, "when the State and a defendant agree that charges will be read in, those charges are expected to be considered in sentencing." Frey, 343 Wis. 2d 358, ¶68; see also

26

Straszkowski, 310 Wis. 2d 259, ¶93 ("[A] circuit court may consider the read-in charge when imposing sentence but the maximum penalty of the charged offense will not be increased.").

¶39 Moreover, as noted previously in our discussion of Straszkowski, "no admission of guilt from a defendant for sentencing purposes is required (or should be deemed) for a read-in charge to be considered for sentencing purposes and to be dismissed." 310 Wis. 2d 259, ¶5 (emphasis added). Stated simply, Attorney De La Rosa's alleged statements to Sulla (1) "that agreeing to the read-in offense of arson was not admitting guilt," and (2) that the read-in offense was something the court would "look at" at sentencing are correct statements of the law under our precedent.

¶40 Even assuming Sulla is entitled to an evidentiary hearing because his motion alleged sufficient facts which, if true, would entitle Sulla to relief, we could still consider whether the record conclusively demonstrates that Sulla is not entitled to relief because he in fact understood the effect the read-in charges could have at sentencing. Here, we will proceed to consider the remainder of the record to determine whether Sulla in fact understood that the read-in charge would be considered by the circuit court when fashioning Sulla's sentence.

D. Whether the Record Conclusively Demonstrates
That Sulla is Not Entitled to Relief

¶41 Under the second prong of Nelson/Bentley, we examine whether "the record conclusively demonstrates that the defendant

is not entitled to relief." Bentley, 201 Wis. 2d at 309-10 (quoting Nelson, 54 Wis. 2d at 497-98). If it so demonstrates, then the "trial court may in the exercise of its legal discretion deny the motion without a hearing." Id.

¶42  In Allen, we considered what it meant for a record to conclusively demonstrate that a defendant was not entitled to the relief sought. 274 Wis. 2d 568, ¶30. There, we explained that the record conclusively refuted the defendant's claim that his trial counsel failed to contact potential witnesses because it contained specific statements by the defendant's attorney indicating that the attorney had investigated and ruled out each witness suggested by the defendant. Id.

¶43  As in Allen, in this case, the record conclusively refutes Sulla's claim that he was misinformed of and therefore did not understand the effect a read-in charge could have at sentencing. The record is replete with indications that Sulla was properly informed and understood that the sentencing court could consider the read-in charges when it determined his sentence.

¶44  First, the Plea Questionnaire/Waiver of Rights form——that Sulla read and signed——clearly explained the effect of a read-in charge at sentencing:

[I]f any charges are read-in as part of a plea agreement they have the following effects:

- Sentencing——although the judge may consider read-in charges when imposing sentence, the maximum penalty will not be increased.

28

- Restitution——I may be required to pay restitution on any read-in charges.

- Future prosecution——the State may not prosecute me for any read-in charges.[15]

¶45 Second, at the plea hearing, the circuit court specifically discussed read-in charges——and their effect at sentencing——with Sulla:

THE COURT: Mr. Sulla, I understand that of the four counts made against you, you intend to withdraw your not guilty pleas and instead plead no contest to crimes in Counts 1 and 3 called armed burglary and burglary both as habitual criminals. Is that right?

SULLA: Yes, ma'am.

THE COURT: And then you expect that both sides will ask me to dismiss Counts 2 and 4, conspiracy to commit arson and operating motor vehicle without owner's consent, again both as habitual criminal, but have me consider those offenses when I sentence you, also true?

SULLA: Yes, ma'am.

. . . .

THE COURT: These pleas are knowing, voluntary, and intelligent. They and the dismissed charges are sufficiently supported by fact. I accept the pleas, find the defendant to be a habitual criminal. Find him guilty as he's charged in Counts 1 and 3 and on the request of both parties and for the reasons provided by the district attorney, dismiss Counts 2 and 4. I'll consider them at sentencing.

(Emphasis added.)

---

[15] We note that the three points listed in the Plea Questionnaire/Waiver of Rights form match the three points we listed in State v. Straszkowski, 2008 WI 65, ¶93, 310 Wis. 2d 259, 750 N.W.2d 825.

29

¶46 Third, at the sentencing hearing, the circuit court explained precisely what effect that the read-in arson charge would have on its sentencing determination for Count 1:

> I want to say two things. <u>One is, you asked me to dismiss it and consider it as a read-in. So I'm going to. I'm not going to consider that you are uninvolved with it.</u> You gave me a victim--<u>you gave me a plea questionnaire that says that you understand that if charges are read in as part of the plea agreement they have the following effect;  at sentencing, the judge may consider read-in charges when imposing sentence, but the maximum penalty will not be increased and that you might be required to pay restitution for read-in charges and that the State can't prosecute you separately for it in the future.</u>

(Emphasis added.)

¶47 Fourth, Sulla agreed to pay over $460,000 in restitution to the victims. As was noted by the postconviction court, this large sum of money can only be computed by factoring in the destruction of the victim's home due to arson (one of the read-in charges).

¶48 Finally, at the time of sentencing, Sulla had amassed a rather extensive criminal record. Included in his criminal record were 17 other charges that had been dismissed and read into the record. The fact that Sulla has past experience with read-in charges only further refutes his claim that he did not understand the effect a read-in charge could have at sentencing. In short, Sulla is not entitled to an evidentiary hearing on his motion for plea withdrawal because the record conclusively demonstrates that Sulla is not entitled to relief. Sulla was

properly informed of and understood the effect the read-in charges would have at sentencing.

E.  Whether the Postconviction Court Erroneously Exercised Its Discretion When it Denied Sulla's Postconviction Motion to Withdraw His Plea Without Holding an Evidentiary Hearing

¶49 We turn to our final consideration: whether the postconviction court erroneously exercised its discretion when it denied Sulla's postconviction motion to withdraw his plea without holding an evidentiary hearing. As discussed previously, "A circuit court properly exercises its discretion when it has examined the relevant facts, applied the proper legal standards, and engaged in a rational decision-making process." Bentley, 201 Wis. 2d at 318.

¶50 Here, the circuit court both orally and in writing set forth its reasons for denying Sulla's motion to withdraw his plea without holding an evidentiary hearing. The postconviction court began its analysis by properly articulating the Nelson/Bentley framework. Next, the postconviction court made extensive and substantiated factual findings. Based on these findings, the postconviction court determined that Sulla was not entitled to an evidentiary hearing on his motion because his affidavit did not allege sufficient facts which, if true, would entitle Sulla to relief. In reaching this conclusion, the postconviction court properly recognized that the statements Sulla takes issue with in his motion for plea withdrawal are in fact "accurate statements of the law."

31

¶51 Though the court could have ended its analysis there, it proceeded to consider whether Sulla was not entitled to an evidentiary hearing on his motion because the record conclusively demonstrated that Sulla was not entitled to relief. In making that determination, the postconviction court combed through the entire record, highlighting the read-in language used in the Plea Questionnaire/Waiver of Rights form and the language used by the circuit court at the plea hearing and the sentencing hearing. Moreover, the postconviction court, citing our decision in Frey, properly zeroed in on the fact that the sentencing court could have considered the arson charge even if Sulla had refused to have the charge read in as part of his plea agreement. See Frey, 343 Wis. 2d 358, ¶47. Relying on the entire record, and our case law, the postconviction court reasoned that Sulla was not entitled to an evidentiary hearing on his motion because the record conclusively demonstrated that Sulla was not entitled to relief, as Sulla was properly informed of and understood the effect the read-in charges would have at sentencing.

¶52 Stated otherwise, the postconviction court properly exercised its discretion when it denied Sulla's postconviction motion to withdraw his plea without holding an evidentiary hearing because it applied the proper legal standard, examined the relevant facts, and engaged in a rational decision-making process. The postconviction court had an abundance of information on which it could base its determination; thus, it

32

was well within its discretion when it dismissed Sulla's motion to withdraw his plea without holding an evidentiary hearing.

## IV.  CONCLUSION

¶53 To summarize, we conclude that the postconviction court was not required to hold an evidentiary hearing before it determined whether Sulla had entered his pleas in a knowing, intelligent, and voluntary fashion. Here, the postconviction court properly exercised its discretion when it denied Sulla's postconviction motion to withdraw his plea without first holding an evidentiary hearing because it applied the proper legal standard, examined the relevant facts, and engaged in a rational decision making process. Moreover, when we apply the Nelson/Bentley test to this case, we conclude that Sulla is not entitled to an evidentiary hearing on his postconviction motion to withdraw his plea. The record in this case, specifically the Plea Questionnaire/Waiver of Rights form and the transcripts from the plea hearing and the sentencing hearing, conclusively demonstrates that Sulla is not entitled to relief because he was correctly informed of and understood the effect of the read-in charges at sentencing.

*By the Court.*—The decision of the court of appeals is reversed.

¶54 ANN WALSH BRADLEY, J. *(concurring).* I agree with the majority that the circuit court did not erroneously exercise its discretion when it denied the defendant's postconviction motion for plea withdrawal without an evidentiary hearing. Majority op. at ¶7. The circuit court applied the proper legal standards and engaged in a rational decision-making process. Id.

¶55 I write separately, however, to address read-in offenses. The court of appeals observed that "the potential for confusion [] is inherent in the read-in concept." It also described the procedure as "not intuitively obvious," and as containing "a certain inconsistency." State v. Sulla, No. 2013AP2316-CR, unpublished slip op., ¶¶12, 15 (Wis. Ct. App. May 21, 2015) (per curiam). I agree.

¶56 The confusion is only exacerbated when defendants consent to have a charge read-in, but continue to proclaim their innocence of that charge. In those situations, greater attention need be employed by the court and counsel to ensure a constitutionally valid plea.

¶57 Accordingly, I recommend a better practice. Given the potential for confusion and the uncertainties detailed below, I urge circuit courts and counsel to make additional efforts to guarantee that defendants understand all the consequences of read-in charges, ensuring that the plea is knowingly, intelligently, and voluntarily made.

I

¶58 A brief history of the read-in procedure is helpful in explaining why it poses a challenge today. This court first

1

used the term "read-in" in Austin v. State, 49 Wis. 2d 727, 183 N.W.2d 56 (1971).[1] In that case, the court examined the validity of plea bargains involving read-in charges, focusing on the subsequent immunity granted to defendants. It first explained the read-in procedure, noting that the "admitted uncharged offenses" expose a defendant to a longer sentence:

> Under our read-in procedure, the defendant does not plead to any charges and therefore is not sentenced on any of the read-in charges but such admitted uncharged offenses are considered in sentencing him on the charged offense. Thus under the read-in procedure, the defendant does not run the risk of consecutive sentences or even concurrent sentences. His only risk is a longer sentence for the crime charged but this sentence cannot exceed the maximum.

Id. at 732.

¶59 The court then observed that the read-in procedure was an outgrowth of English common law which permitted consideration of uncharged offenses at the request of the accused (referred to as the practice of "taking into account"). Id. English practice was to refrain from subsequently prosecuting offenses that had been taken into account. Id. Relying on notions of fairness, the Austin court determined that this practice

---

[1] Although Austin was the first case from this court to use the term "read in," a few earlier cases described the procedure. See, e.g., Embry v. State, 46 Wis. 2d 151, 158, 174 N.W.2d 521 (1970) ("Upon agreement between the state and the accused, the judge may take these [dismissed] offenses into consideration and the prosecution agrees not to prosecute."); State v. Smith, 45 Wis. 2d 39, 42, 172 N.W.2d 18 (1969) ("In the instant case the defendant voluntarily agreed to allow the judge to consider unproven offenses so that, should the state later attempt to prosecute him, he could successfully assert the defense of double jeopardy.").

2

constituted good public policy and upheld the read-in procedure. Id. at 736.

¶60 Since Austin, the idea that read-in charges were "admitted" was included in multiple opinions. See, e.g., State v. Lackershire, 2007 WI 74, ¶27 n.7, 301 Wis. 2d 418, 734 N.W.2d 23 ("When charges are read in during sentencing, the defendant admits to having committed the underlying crimes, but does not plead guilty to the charges, and therefore is not sentenced for those charges."); State v. Martel, 2003 WI 70, ¶21, 262 Wis. 2d 483, 664 N.W.2d 69 ("offenses that are dismissed and read in are admitted by the defendant for purposes of consideration at sentencing on the crime or crimes for which the defendant is convicted"); State v. Floyd, 2000 WI 14, ¶25, 232 Wis. 2d 767, 606 N.W.2d 155 ("Read-ins constitute admissions by the defendant to those charges."); In Interest of R.W.S., 162 Wis. 2d 862, 866 n.1, 471 N.W.2d 16 (1991) ("[The defendant] is not sentenced on these read-in charges, but these admitted, uncharged offenses are considered in sentencing him or her on the charged offense.").

¶61 However, as this court has acknowledged, Austin did not state that a defendant's admission was required for Wisconsin's read-in procedure. State v. Straszkowski, 2008 WI 65, ¶68, 310 Wis. 2d 259, 750 N.W.2d 835. Further, some cases "describe the defendant's admission of a read-in charge not as an actual admission of guilt but rather as an admission as a matter of law that the defendant makes simply by agreeing to read in a dismissed charge." Id., ¶¶69-73 (citing State v.

3

Cleaves, 181 Wis. 2d 73, 510 N.W.2d 143 (Ct. App. 1993); State v. Szarkowitz, 157 Wis. 2d 740, 753, 460 N.W.2d 819 (Ct. App. 1990)). Other cases described the read-in procedure without making reference to the defendant's actual or deemed admission of guilt. Martinkoski v. State, 51 Wis. 2d 237, 186 N.W.2d 302 (1971); Embry v. State, 46 Wis. 2d 151, 174 N.W.2d 521 (1970).

¶62 In 1995, the legislature incorporated a reference to read-in procedures into the statute governing restitution, Wis. Stat. § 973.20. Specifically, it drafted subsection (1g) to insert a definition of "read-in crime" into the restitution statute and add provisions making it clear that restitution could be ordered for those crimes. The preliminary draft assumed that a read-in crime required an admission by the defendant:

> "Read-in crime" means any crime that is uncharged, that the defendant admits to having committed and that the court considers at the time of sentencing the defendant for the crime for which the defendant was convicted.

1995 A.B. 467, § 3, LRB-0353/1.

¶63 However, as detailed in Strazkowski, the Department of Justice (DOJ) objected to this definition, asserting that it was inconsistent with the law on read-ins. 310 Wis. 2d 259, ¶¶82-83 (citing Correspondence/Memorandum: Department of Justice, Aug. 11, 1995, in Bill Drafting File 1995 Wis. Act 141). It proposed an alternative definition that would not require an admission by

4

the defendant.[2]  The Legislature ultimately adopted the DOJ's proposed language.  See  Wis. Stat. § 973.20(1g)(b).

¶64 After reviewing the case law and this legislative history, Straszkowski directly addressed whether a defendant is deemed to have admitted or is required to admit guilt when a plea includes a read-in charge.  Observing that "this court has not necessarily been consistent in describing read-in offenses," and that the restitution statute, Wis. Stat. § 973.20(1g), "makes no reference to any sort of admission, whether actual or deemed," it determined that no admission of guilt was required or presumed for read-in purposes.  310 Wis. 2d 259, ¶¶85, 88, 92.

¶65 Straszkowski advised that "prosecuting attorneys, defense counsel, and circuit courts should hereafter avoid (as they did in the instant case) the terminology 'admit' or 'deemed admitted' in referring to or explaining a defendant's agreement to read in charges."  Id., ¶94.  Further, it specifically withdrew language in the case law "that may be read as intimating that when a charge is read in a defendant must admit

---

[2] The Department of Justice proposed the following language:

"Read-in" means any crime that is uncharged or which is dismissed as part of a plea agreement, that the defendant agrees to be considered by the court at sentencing and that the court considers at the time of sentencing the defendant for the crime for which the defendant was convicted.

Correspondence/Memorandum: Department of Justice, Aug. 11, 1995, at 2, in Bill Drafting File 1995 Wis. Act 141 (emphasis in original).

5

or is deemed to admit the read-in charge for sentencing purposes." Id., ¶95.

¶66 The only substantive court discussion of read-in procedures since Straszkowski is contained in State v. Frey, 2012 WI 99, 343 Wis. 2d 358, 817 N.W.2d 436. In that case, the court addressed whether a circuit court could consider dismissed charges in imposing sentences when they were not read-in. Id. Its analysis repeated Straszkowski's discussion of read-in procedures and explained how they differed from charges that are dismissed. Id., ¶¶63-73, 77-80.

II

¶67 Although Straszkowski clarified part of the read-in procedure, it remains a thorny concept. The circuit court in this case was correct when it stated that counsel's explanation of a read-in charge——that it was not an admission of guilt, but something that the court would look at during sentencing——was an "accurate statement[] of law." Further, it correctly described the Plea Questionnaire/Waiver of Rights form as "legally proper."[3] However, even as such understandings prevail, there is a lack of clarity when it comes to the application of read-in procedures, especially in the context of a defendant's assertion of innocence.

¶68 Confusion from the bar and the bench regarding read-in procedures persists, as is reflected in unpublished opinions

_____

[3] The Plea Questionnaire/Waiver of Rights form advises defendants that "the judge may consider read-in charges when imposing sentence. . . ."

6

from the court of appeals.[4] Doubtlessly some of this confusion stems from the fact that Straszkowski withdrew language from our precedent that some courts had been following for decades.[5] And as I review plea and sentencing transcripts, it appears that courts and counsel continue to rely on now withdrawn language from past precedent.

¶69 Given the red flags raised by the court of appeals' admonitions that the read-in procedure is not intuitively obvious and contains the potential for inconsistency and inherent confusion, sentencing courts and practitioners may need

---

[4] See, e.g., State v. Triplett, No. 2014AP2825-CR (Wis. Ct. App. Apr. 14, 2016) (decision on publication pending) (counsel allegedly told defendant that "the read-in charges could not [be] considered by the judge at sentencing because he was not admitting to the read-in offenses"); State v. Buckles, No. 2014AP2717-CR, unpublished slip op., ¶9 (Wis. Ct. App. Nov. 10, 2015) (attorney advised defendant that "the read-in offenses could be used by the State for restitution purposes only and not as "aggravating" factors during sentencing"); State v. Clayton-Jones, No. 2010AP2239-CR, unpublished slip op., ¶32 (Wis. Ct. App. Dec. 15, 2011) ("what neither [the defendant] nor our own non-exhaustive review of the case law makes clear is what must minimally occur before alleged conduct is treated as a 'read-in' for purposes of the Wisconsin rule prohibiting a future prosecution.").

[5] See, e.g., State v. Cleaves, 181 Wis. 2d 73, 79, 510 N.W.2d 143 (Ct. App. 1993) (observing that the defendant's "'admission' to the charges came when he allowed the dismissed crimes to be 'read in.'"); State v. Mattes, 175 Wis. 2d 572, 581, 499 N.W.2d 711 (Ct. App. 1993) (describing read-ins as "admitted uncharged offense[s]"); State v. Szarkowitz, 157 Wis. 2d 740, 753, 460 N.W.2d 819 (Ct. App. 1990) (relying on Austin for the conclusion that "In Wisconsin, when a defendant agrees to crimes being read in at the time of sentencing, he makes an admission that he committed those crimes.").

to take special care with read-in charges, especially in the context of protestations of innocence.

¶70 Previously a unanimous court of appeals voiced concerns about the need to ensure a defendant properly understands the consequences of a read-in charge. Cleaves, 181 Wis. 2d at 80 n.1. In his concurrence, Judge Nettesheim recommended that circuit courts engage in a personal colloquy to establish that the defendant understands all of the consequences of a read-in charge that may apply. Id. at 81 (Nettesheim, J. concurring) (emphasis in original). I resurrect that recommendation.

¶71 Further, I acknowledge that uncertainties, not previously addressed by this court, continue to linger. We have advised that "the circuit court may consider the read-in charge when imposing a sentence." Straszkowski, 310 Wis. 2d 259, ¶93 (emphasis added). Similarly, the majority declares that "the read-in charge will be considered by the sentencing court." Majority op., ¶35 (emphasis added). Yet we do not explain how read-ins should be considered when defendants maintain their innocence.

¶72 The absence of guidance in this area is particularly striking considering the wealth of information that has been provided in the somewhat analogous situation of an Alford plea.[6]

---

[6] The term "Alford plea" refers to the practice where "the defendant pleads guilty while either maintaining his innocence or not admitting having committed the crime." State v. Garcia, 192 Wis. 2d 845, 856, 532 N.W.2d 111 (1995). It is named after a United States Supreme Court case which determined that the
(continued)

8

In both situations, defendants protest their innocence, but nevertheless can acquiesce to the possibility of serving a prison sentence for the offense.

¶73 Given the rights that a defendant relinquishes when entering an Alford plea, special care is taken to ensure that such a plea is knowing, intelligent, and voluntary.[7] For instance, the Wisconsin Jury Instructions recommend that courts address "special questions to defendants to assure that they understand that if the plea is accepted, an unequivocal criminal judgment will be entered——a judgment that will allow imposition of the same penalties that could follow regular guilty plea." Wis. JI-Criminal SM-32A at 12 (1995).

¶74 It advises the court to "ask defense counsel to make a statement on the record to show that the nature and consequences of the Alford plea were thoroughly discussed with the defendant and what the defendant's understanding of that discussion was." Id. at 12. It also provides a script for courts to use when accepting Alford pleas. Id. at 13-14. These safeguards ameliorate the uncomfortable fit of accepting a guilty plea while the defendant protests innocence. State v. Garcia, 192 Wis. 2d 845, 858, 532 N.W.2d 111 (1995).

---

practice was constitutional, North Carolina v. Alford, 400 U.S. 25 (1970).

[7] The rights waived by entering an Alford plea include "the privilege against self-incrimination, the right to a trial by jury, and the right to confront one's accusers." State v. Hampton, 2004 WI 107, ¶22, 274 Wis. 2d 379, 683 N.W.2d 14.

9

¶75 To further protect defendants entering Alford pleas, we require strong evidence of guilt before a court can accept such a plea. Id., at 857. This court has provided detailed guidance clarifying that standard, explaining that it falls between "beyond reasonable doubt" and the proof necessary to meet the factual basis requirement behind a guilty plea:

> The requirement of a higher level of proof in Alford pleas is necessitated by the fact that the evidence has to be strong enough to overcome a defendant's "protestations" of innocence. Although strong proof of guilt is less than proof beyond a reasonable doubt, State v. Spears, 147 Wis. 2d 429, 435, 433 N.W.2d 595 (Ct. App. 1988), it is clearly greater than what is needed to meet the factual basis requirement under a guilty plea.

State v. Smith, 202 Wis. 2d 21, 27, 549 N.W.2d 232 (1996) (internal citation omitted).[8] No similar guidance is available for courts struggling with how to consider a read-in charge when the defendant maintains innocence.

---

[8] State v. Spears, 147 Wis. 2d 429, 435, 433 N.W.2d 595 (Ct. App. 1988), similarly described the concept of "strong proof of guilt":

> First, it is not the equivalent of proof beyond a reasonable doubt. Indeed, the court suggested that the trial court's conclusion in that case that there was a factual basis for the plea "was equivalent to a finding that the proof of guilt was strong." Second, the Johnson court framed the inquiry as whether the record "indicates that a sufficient factual basis was established at the plea proceeding to substantially negate [the] defendant's claim of innocence."

(citing State v. Johnson, 105 Wis. 2d 657, 664, 314 N.W.2d 897 (Ct. App. 1981)).

10

¶76 With our current precedent, courts and defense attorneys can give advice that is "proper" and "legally accurate," even though it fails to address the ambiguities in the read-in procedure. When defendants maintain their innocence of read-in charges, it remains uncertain how those charges will be considered. How much weight should a sentencing court accord to those read-in charges? Are there circumstances where they are not entitled to any weight? Should this court adopt the strong proof requirement set forth in Smith, 202 Wis. 2d at 27, and Garcia, 192 Wis. 2d at 857-58?

¶77 I am mindful of the legal landscape allowing sentencing courts to consider all relevant information, including dismissed, uncharged, and unproven offenses. Frey, 343 Wis. 2d 358, ¶¶45-47. Nevertheless, it is not always clear how to reconcile the concept of being able to lengthen a prison sentence for an offense where a defendant maintains innocence with the underpinnings of our system of justice. Those underpinnings include the presumption of innocence, the privilege against self-incrimination, the right to confront one's accuser, and the right to present a defense. State v. Hampton, 2004 WI 107, ¶22, 274 Wis. 2d 379, 683 N.W.2d 14. Absent clarification on how sentencing courts should consider read-in charges where defendants maintain their innocence, this tension remains unaddressed.

### III

¶78 An antidote to the confusions and uncertainties that attend a read-in offense which is accompanied with a

11

protestation of innocence, lies in giving the defendant more information. I urge circuit courts and counsel to make additional efforts to guarantee that defendants understand all the consequences of read-in charges, ensuring that the plea is knowingly, intelligently, and voluntarily made. Accordingly, I respectfully concur.

¶79 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this concurrence.